## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JASON MICHAEL GWYNNE,

        Petitioner,

        v.                             Civ. No. 21-333 KG/SCY

RICK MARTINEZ and ATTORNEY
GENERAL OF THE STATE OF
NEW MEXICO,

        Respondents.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

        This Proposed Findings and Recommended Disposition ("PFRD") addresses Petitioner

Jason Michael Gwynne's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a

Person in State Custody." Doc. 1. The Honorable Kenneth J. Gonzales referred this case to me to

conduct hearings, if warranted, and to perform any legal analysis required to recommend to the

Court an ultimate disposition of the case. Doc. 4. Having reviewed the petition, I recommend

finding that some claims are procedurally defaulted, and therefore barred from review by this

Court. As to the remaining claims, I recommend finding that both the exhausted and unexhausted

claims fail on the merits. Therefore, I recommend denying this petition.

## BACKGROUND

### 1. Factual Background

        To provide context regarding Mr. Gwynne's claims, I repeat the factual background from

the New Mexico Court of Appeal's order on direct appeal:

> In January 2013 Defendant [Jason Gwynne] at the time thirty-five years old, was
> living in a one-bedroom trailer with his then-sixteen-year-old stepdaughter
> (Stepdaughter), whose mother had passed away in September 2012. Defendant
> allowed a sixteen-year-old friend (Friend) of Stepdaughter who had run away
> from home to stay with them. Stepdaughter slept on the pullout couch in the

living room, while Defendant and Friend slept in the only bedroom. One night, Stepdaughter observed what she believed was Friend performing oral sex on Defendant in the trailer's bedroom and, after confronting Friend, reported the incident to an adult and later spoke with law enforcement. Stepdaughter reported to law enforcement that Friend and Defendant were "having a sexual affair" and that she had seen "naked pictures of unknown girls [of unknown age] on Defendant's cell phone."

Law enforcement conducted a search of Defendant's residence, seized Defendant's phone, and downloaded three videos depicting Friend engaged in sexual acts. Defendant was initially charged with one count of sexual exploitation of children (possession) contrary to NMSA 1978, Section 30-6A-3(A) (2007, amended 2016). After law enforcement officers further investigated the matter and obtained evidence indicating that Defendant was the male participant in what the officers believed were self-recorded videos where Defendant was engaged in sexual acts with Friend, Defendant was additionally charged with two counts of sexual exploitation of children (manufacturing) in violation of Section 30-6A-3(D). Defendant denied both having a sexual relationship with Friend and that he was the male participant in the video. At trial, the central issue to be decided was the identity of the male participant in the videos.

The State's first witness was Stepdaughter, whose testimony primarily established (1) when and why Friend had come to live with Stepdaughter and Defendant, (2) where Friend slept in the trailer, and (3) what prompted Stepdaughter to make a report concerning Friend and Defendant to authorities. Additionally, after the district court denied Defendant's motion in limine to exclude testimony by Stepdaughter regarding her observation of a prior sexual encounter between Defendant and Friend, Stepdaughter was allowed to testify that she once observed Friend performing oral sex on Defendant in the bedroom of the trailer.

The State next called Friend, who testified that she was the female in the videos and that Defendant was the male. Friend admitted that she had previously stated that the male in the video was someone other than Defendant, but at trial she testified that her prior statement was a lie. Friend stated that she was aware that the video was being made and that Defendant was the person taking the video using his own cellular phone.

Deputy Victor Hernandez of the Lea County Sheriff's Department described the investigation that followed Stepdaughter's report. He testified that when he went to Defendant's home to investigate and question[] Defendant, Defendant denied having sexual intercourse with Friend and told Deputy Hernandez that Friend slept on the couch. Deputy Hernandez's testimony also laid the foundation for the

admission of State's Exhibit 1—the videos downloaded from Defendant's phone, which Deputy Hernandez seized during his investigation.[1]

Detective Mark Munro of the Hobbs, New Mexico Police Department testified regarding the videos themselves and how he came to suspect that Defendant was both the male participant in the videos and the person who manufactured the videos. He explained that "the angle and the manner [in] which [the video] was recorded was consistent with a participant recording the video." He testified that while only the face of the female in the videos was "readily apparent," the abdomen and genitals of the male participant were visible and contained what Detective Munro described as "a consistent abnormality to the abdomen, ... some sort of a scar or possibly a tattoo" in each of the videos. He then explained that as part of his investigation he reviewed photographs of Defendant's unclothed torso that were taken by Deputy Hernandez and watched the videos again, comparing the images in the video of the male participant's abdominal area to the photographs of Defendant. Because Friend, who initially told law enforcement that Defendant was the male in the videos, changed her story and identified another person as the male participant, Detective Munro also personally examined and photographed the torso of the other suspect in order to compare it to the videos. Detective Munro explained that he "freeze frame[d] and pull[ed] ... screenshot[s]" from the videos in order to be able to compare the images in the videos with the photographs of Defendant and the other suspect. Based on his comparison of the videos—including the screenshot images—and the photographs, Detective Munro believed that the photograph of Defendant was "consistent" with the person that he saw in the video and that the other suspect was not the person in the video.

The district court admitted, and the State published to the jury, the videos in their entirety, the photographs of Defendant's and the other suspect's respective torsos, and the screenshot images taken from the three videos showing the male participant's abdominal area. The jury found Defendant guilty on all counts.

*State v. Gwynne*, 2018-NMCA-033, ¶¶ 2-8, 417 P.3d 1157, 1161–63 (internal footnotes omitted).

## 2. Procedural Background

On May 3, 2013, a criminal information charged Mr. Gwynne with one count of sexual exploitation of children (possession). Doc. 10-1 at 1 (Ex. A).[2] An amended criminal information,

---

[1] As testimony at trial established, the videos were downloaded from Mr. Gwynne's cellphone using a system call Cellebrite. Jury Trial CD at 4:41:02 to 4:42:02 (June 2, 2014).

[2] The Court cites the Bate stamp numbers on the exhibits, attached to the State's answer as Docs. 10-1 and 10-2.

filed September 5, 2013, charged Mr. Gwynne with three counts of sexual exploitation of children (possession), *id.* at 12 (Ex. D), which was corrected in the Second Amended Corrected Criminal Information filed September 19, 2013, to one count of sexual exploitation of children (possession) and two counts of sexual exploitation of children (manufacturing), *id.* at 16 (Ex. F). The Corrected Third Amended Criminal Information, filed on January 7, 2014, also charged Mr. Gwynne with one count of possession and two counts of manufacturing. *Id.* at 21 (Ex. I), 26 (Ex. K). On June 3, 2014 a jury returned guilty verdicts on all three charges. *Id.* at 52 (Ex. N), 53 (Ex. O), 54 (Ex. P). The Fifth Judicial District Court of New Mexico sentenced Mr. Gwynne to incarceration for 19 years, 3 months, and 3 days, followed by 5 to 20 years of parole. *Id.* at 60-61 (Ex. T).[3]

On August 27, 2014, Mr. Gwynne, through counsel, appealed his conviction to the New Mexico Court of Appeals. *Id.* at 63 (Ex. U). On this direct appeal, Mr. Gwynne raised two issues: (1) his sentence violated procedural due process and (2) the inconsistencies of the penalty statutes violate substantive due process and equal protection. *Id.* at 79 (Ex. X). After the New Mexico Court of Appeals proposed a summary disposition given Mr. Gwynne's failure to develop these issues, *id.* at 98-105 (Ex. AA), Mr. Gwynne moved to amend his docketing statement to add new issues on appeal. *Id.* at 107 (Ex. BB). The appeals court allowed the amendment, *id.* at 150 (Ex. CC) and, based on Mr. Gwynne's brief in chief, described Mr. Gwynne as raising the following issues: (1) multiple evidentiary issues, including improper opinion testimony from Detective Munro regarding altered screenshot images, improper

---

[3] The original Judgment and Sentence applied 89 days of credit for time served to the time sentenced for each court, reducing the days of incarceration left to 18 years, 9 months, and 9 days. Doc. 10-1 at 56-57 (Ex. R). However, the Amended Judgment and Sentence applied the 89 days of credit for time served to just the time sentenced for count 2. *Id.* at 60-61 (Ex. T).

testimony from Deputy Hernandez as to a second victim (or ineffective assistance of counsel for failing to seek a mistrial or curative instruction following testimony from Deputy Hernandez regarding a second victim), improper reliance by the State on testimony of prior sexual contact to prove conformity, and cumulative error; (2) double jeopardy between the possession and manufacturing count; (3) equal protection and substantive due process violations; and (4) insufficient evidence to support the convictions.[4] *Id.* at 151-206 (Ex. DD). On February 14, 2018, the New Mexico Court of Appeals affirmed on all grounds. *Id.* at 286-327 (Ex. GG). Mr. Gwynne then filed a petition for writ of certiorari with the New Mexico Supreme Court, raising the same issues as addressed by Court of Appeals, *id.* at 328-30 (Ex. HH), which the Supreme Court denied, *id.* at 344-45 (Ex. II).

On May 18, 2018, Mr. Gwynne filed a pro se petition for writ of habeas corpus in the state district court. *Id.* at 346-410 (Ex. JJ). He raised four issues, each containing sub-issues: (1) illegal search and seizure based on incorrectly dated search warrant and false information used in the search warrant; (2) ineffective assistance of counsel; (3) *Brady* violations; and (4) Confrontation Clause violation. *Id.* At the request of the state court, Mr. Gwynne provided additional information regarding the search warrant. *Id.* at 411-12 (Ex. KK), 417-19 (Ex. MM). He also moved to amend his petition to add additional information regarding his claims. *Id.* at 458-72 (Ex. RR). On May 17, 2019, the state court assigned Mr. Gwynne standby counsel and gave counsel time to file an amended habeas petition or a notice of non-intent to amend the habeas petition. *Id.* at 473 (Ex. SS). Counsel for Mr. Gwynne filed notice that she did not intend to amend the pro se habeas petition. *Id.* at 474 (Ex. TT). On January 15, 2020, the state court

---

[4] In the motion to amend docketing statement, Mr. Gwynne included two other issues—the count 3 conviction is outside the scope of the statutory offense of manufacturing and error in jury instructions—which he did not repeat in his brief in chief. Doc. 10-1 at 107 (Ex. BB).

issued a Preliminary Disposition Order, finding that the warrant issue was the only "potentially meritorious issued raised." *Id.* at 477 (Ex. VV). Thus, Mr. Gwynne, though counsel, filed a supplement to his habeas petition, as to the warrant issue. *Id.* at 479-82 (Ex. WW). Following an evidentiary hearing, both the State and Mr. Gwynne (through counsel) submitted proposed findings of facts and conclusions of law. *Id.* at 512-16 (Ex. ZZ), 517-20 (Ex. AAA). On January 21, 2021, the state district court issued its findings of fact and conclusions of law, *id.* at 521-25 (Ex. BBB), and denied the habeas petition, Doc. 10-2 at 648-49 (Ex. EEE).

Mr. Gwynne filed a petition for writ of certiorari to the New Mexico Supreme Court, in which he raised five issues: (1) cellphone evidence should have been suppressed given the post-dated warrant; (2) the State used false testimony and evidence about a non-existent forensic Cellebrite extraction; (3) Confrontation Clause violation; (4) the State committed a *Brady* violation by failing to disclose the Cellebrite forensics report; and (5) Detective Munro's testimony of the forensic extraction was hearsay. Doc. 10-1 at 527-33 (Ex. CCC). The New Mexico Supreme Court denied the petition. Doc. 10-2 at 652 (Ex. GGG).

On April 12, 2021, Mr. Gwynne filed the present Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. In his petition, Mr. Gwynne raises 10 grounds for relief, some of which include multiple parts or subclaims: (1) double jeopardy and ineffective assistance of appellant counsel regarding the double jeopardy claim; (2) evidentiary errors and ineffective assistance of appellate counsel regarding evidentiary issues; (3) NMSA § 30-6A-3(D) is unconstitutional as applied (invasion of privacy); (4) insufficient evidence; (5) illegal search and seizure and ineffective assistance of appellant counsel regarding illegal search issue; (6) false information used to secure the search warrant and ineffective assistance of appellant counsel regarding false information in warrant issue; (7) ineffective

assistance of trial counsel for failure to investigate, failure to suppress evidence, failure to challenge improper evidence, failure to properly cross-examine, and failure to properly assess facts, and ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel issues on appeal; (8) *Brady* violations and ineffective assistance of appellant counsel for failure to raise *Brady* issues; (9) Confrontation Clause violation and ineffective assistance of appellant counsel regarding the Confrontation Clause; and (10) actual innocence and ineffective assistance of appellate counsel regarding actual innocence claim. *Id.* After screening the petition under Habeas Corpus Rule 4, this Court ordered the Respondents ("the State") to file an answer. Doc. 3. The State filed its answer, Doc. 12, and Mr. Gwynne filed a reply, Doc. 14. The petition is now ready for a decision.[5]

## INITIAL MATTERS

Before turning to the merits of Mr. Gwynne's petition, I address the issues of exhaustion and procedural default. Because Mr. Gwynne has presented numerous claims at different stages of his direct appeal and post-conviction proceedings, I have created the following table to summarize the claims he presents at each stage.[6]

---

[5] Shortly before I entered this PFRD, Mr. Gwynne filed a notice of address change, indicating that he has been released from incarceration and placed on parole. Doc. 15. This notice does not change the posture of this case. Section 2254 provides a remedy when a petitioner is "*in custody* in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a) (emphasis added). The Supreme Court has "interpreted the statutory language as requiring that the habeas petitioner be 'in custody' under the conviction or sentence under attack *at the time his petition is filed*," *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (emphasis added), which Mr. Gwynne was. His case is also not moot because he is on parole and so his sentence has not yet expired. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998).

[6] While Mr. Gwynne included numbering for his main claims (#1-10), for ease of discussion, I also include numbering for all sub-claims.

| Claims in the Present § 2254 Petition | Claims on Direct Appeal | Claims in the State Habeas Petition | Habeas Claims Appealed |
|---|---|---|---|
| 1.1. Ineffective assistance of appellate counsel: counsel failed to raise the proper arguments regarding double jeopardy (Doc. 1 at 6) | | | |
| 1.2. Double jeopardy: state failed to provide evidence of intent for duplicate videos (Doc. 1 at 6) | Double jeopardy between the possession and manufacturing count (Doc. 10-1 at 191, Ex. DD) | | |
| 2.1. Ineffective assistance of appellate counsel: counsel failed to investigate and raise proper arguments regarding evidentiary issues (Doc. 1 at 9) | | | |
| | Ineffective assistance of counsel: failing to seek a mistrial or curative instruction following testimony from Deputy Hernandez regarding a second victim (Doc. 10-1 at 178, Ex. DD). | | |
| 2.2. Evidentiary errors: State used improper propensity evidence (Doc. 1 at 9) | Evidentiary error: the State relied on testimony of prior sexual contact to prove conformity (Doc. 10-1 at 181, Ex. DD) | | |
| 2.3. Evidentiary error: Detective Munro's testimony regarding the non-existent Cellebrite extraction was improper hearsay (Doc. 1 at 9) | | | Detective Munro's testimony of the forensic extraction was hearsay (Doc. 10-1 at 532, Ex. CCC); Due process: State used false testimony and evidence about a non-existent forensic Cellebrite extraction (Doc. 10-1 at 531, Ex. CCC) |
| | Evidentiary error: improper opinion testimony from | | |

| | Detective Munro regarding altered screenshot images (Doc. 10-1 at 169, Ex. DD) | | |
|---|---|---|---|
| 2.4. Evidentiary error: Deputy Hernandez gave false testimony to the jury regarding the evidence (Doc. 1 at 11) | | | |
| | Evidentiary error: Deputy Hernandez made repeated references to a second victim (Doc. 10-1 at 175, Ex. DD) | | |
| 2.5. Evidentiary error: cumulative error (Doc. 1 at 14) | | | |
| | Cumulative prejudice of evidentiary errors (Doc. 10-1 at 189, Ex. DD) | | |
| 3. NMSA § 30-6A-3(D) is unconstitutional as applied- invasion of private relationship (Doc. 1 at 17) | | | |
| | Convictions violate equal protection and substantive due process (Doc. 10-1 at 195, Ex. DD) | | |
| 4. Insufficient evidence (Doc. 1 at 21) | Insufficient evidence to support convictions (Doc. 10-1 at 200, Ex. DD) | | |
| 5.1. Illegal search and seizure by Deputy Hernandez (Doc. 1 at 25) | | Fourth Amendment unreasonable search: search warrant improperly post-dated (Doc. 10-1 at 348, Ex. JJ) | Cellphone evidence should have been suppressed due to post-dating (Doc. 10-1 at 530, Ex. CCC) |
| 5.2. Ineffective assistance of appellant counsel: failed to raise the illegal search issue on appeal (Doc. 1 at 24) | | | |
| 6.1. False information used to secure the search warrant (Doc. 1 at 32) | | Fourth Amendment unreasonable search and Fourteenth Amendment substantive due process: false information used in | |

| | | | |
|---|---|---|---|
| | | search warrant affidavit regarding pictures of another alleged victim (Doc. 10-1 at 351, Ex. JJ); Fourth Amendment unreasonable search: false information used in search warrant affidavit regarding "File 1 jpg" (Doc. 10-1 at 355, Ex. JJ) | |
| 6.2. Ineffective assistance of appellant counsel: failed to raise issue regarding false information in the search warrant (Doc. 1 at 31) | | | |
| 7.1. Ineffective assistance of trial counsel: failed to investigate police report of other case with a different victim (Doc. 1 at 37) | | Ineffective assistance of counsel: failed to investigate police report (Doc. 10-1 at 306, Ex. JJ) | |
| 7.2. Ineffective assistance of trial counsel: failed to suppress property illegally seized (Doc. 1 at 37) | | Ineffective assistance of counsel: failed to suppress evidence illegally seized (Doc. 10-1 at 360, Ex. JJ) | |
| 7.3. Ineffective assistance of trial counsel: allowed evidence from another case to be used (Doc. 1 at 37) | | | |
| 7.4. Ineffective assistance of trial counsel: failed to challenge evidence regarding the videos (Doc. 1 at 37) | | | |
| 7.5. Ineffective assistance of trial counsel: failed to cross examine the State's analyst (Doc. 1 at 37-38) | | | |
| 7.6. Ineffective assistance of trial counsel: allowed evidence from an uncharged case to be used (Doc. 1 at 38) | | | |
| 7.7. Ineffective assistance of trial counsel: failed to confront witnesses and properly assess facts (Doc. 1 at 38) | | Ineffective assistance of counsel: failed to present a complete defense (Doc. 10-1 at 360, Ex. JJ) | |

| | | | |
|---|---|---|---|
| 7.8. Ineffective assistance of trial counsel: failed to suppress evidence from another case (Doc. 1 at 39) | | | |
| | | Ineffective assistance of counsel: failed to obtain forensic report to show ownership of the cellphone (Doc. 1 at 360, Ex. JJ). | |
| 7.9 Ineffective assistance of appellant counsel: failed to raise ineffective assistance of trial counsel on appeal (Doc. 1 at 36) | | | |
| 8.1. *Brady* violation: State failed to disclose authentication documents of the cellphone video (Doc. 1 at 42) | | *Brady* violation: State withheld Forensics Cellebrite report (Doc. 10-1 at 364, Ex. JJ); *Brady* violation: no chain-of-custody evidence disclosed for illegally seized property or CDs used at trial (Doc. 10-1 at 364, Ex. JJ) | *Brady* violation: state failed to disclose the Cellebrite forensics report (Doc. 10-1 at 531, Ex. CCC) |
| 8.2 *Brady* violation: State failed to disclose report by Officer Hardison (re: M.J.) (Doc. 1 at 44) | | *Brady* violation: State failed to disclose witness statements and police reports, including re: Officer Hardison's report about M.J. (Doc. 10-1 at 366, Ex. JJ) | |
| 8.3 *Brady* violation: State failed to disclose a report by Officer Vinson (Doc. 1 at 45) | | | |
| 8.4 *Brady* violation: State failed to disclose two reports by Detective Munro (Doc. 1 at 47). | | *Brady* violation: State failed to disclose witness statements and police reports, including Detective Munro's report (Doc. 10-1 at 366, Ex. JJ) | |
| 8.5. Ineffective assistance of appellate counsel: failed to raise *Brady* violation issues on appeal (Doc. 1 at 41) | | | |
| 9.1. Sixth Amendment right to confront Deputy Clayton violated (Doc. 1 at 50) | | Confrontation Clause violation related to the | Confrontation Clause violation related to analyst |

| | | forensic analyst (Doc. 10-1 at 368, Ex. JJ) | Keith Clayton (Doc. 10-1 at 531, Ex. CCC) |
|---|---|---|---|
| 9.2. Ineffective assistance of appellate counsel: failed to raise the Confrontation Clause issue on appeal (Doc. 1 at 49) | | | |
| 10.1. Actual innocence (Doc. 1 at 54) | | | |
| 10.2. Ineffective assistance of appellate counsel: failed to raise actual innocence on appeal (Doc. 1 at 53) | | | |

### 1. Exhaustion

Under 28 U.S.C. § 2254(b)(1)(A), a petition for writ of habeas corpus generally cannot be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." Exhaustion requires that a claim be pursued "through one complete round of the State's established appellate review process, giving the state courts a full and fair opportunity to correct alleged constitutional errors." *Selsor v. Workman*, 644 F.3d 984, 1026 (10th Cir. 2011) (citation and quotations omitted). Said another way, "a state prisoner seeking federal habeas relief generally must have first submitted each of his claims to the State's highest court." *Jernigan v. Jaramillo*, 436 F. App'x 852, 855 (10th Cir. 2011).[7] "The exhaustion requirement is satisfied if the federal issue has been properly presented to the highest state court, either by direct review of the conviction or in a post-conviction attack." *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994). To that end, the exhaustion requirement is satisfied even if "the highest court exercises discretion not to review the case." *Id*.

---

[7] The Court cites unpublished Tenth Circuit cases for their persuasive value. *See* 10th Cir. R. 32.1(A) ("Unpublished decisions are not precedential, but may be cited for their persuasive value.").

As illustrated by the table, Mr. Gwynne exhausted claims 1.2, 2.2, and 4, which he presented to the New Mexico Court of Appeals and New Mexico Supreme Court on direct appeal.[8] He also exhausted claims 5.1, 8.1, and 9.1, which he presented in his state post-conviction habeas petition and for which he sought a writ of certiorari with the New Mexico Supreme Court. And, Mr. Gwynne may have exhausted claim 2.3, which he did not include in his direct appeal or his state habeas petition, but did include in his appeal of the state habeas petition. *See Richwine v. Romero*, 462 F. App'x 770, 772 (10th Cir. 2011) ("The New Mexico Supreme Court has stated that its review by certiorari of a state district court denial of a habeas petition is actually an exercise of its original jurisdiction. Therefore, a prisoner might be said to have exhausted a claim by raising it for the first time in his petition for certiorari to the state's highest court." (citing *Cummings v. State,* 2007-NMSC-048, ¶ 9, 168 P.3d 1080, 1082–83)).

Mr. Gwynne, however, failed to exhaust the claims that he did not include in either his direct appeal or state post-conviction proceedings and thus did not present to the state's highest court. These unexhausted claims are: 1.1, 2.1, 2.4, 3, 5.2, 6.2, 7.3, 7.4, 7.5, 7.6, 7.8, 7.9, 8.3, 8.5,

---

[8] I find that Mr. Gwynne did not exhaust claim 2.5, cumulative evidentiary errors, because, although he presented a claim for cumulative evidentiary errors on direct appeal, the substance of the cumulative error claims are different. *See Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) ("Exhaustion requires that the claim be 'fairly presented' to the state court, which 'means that the petitioner has raised the "substance" of the federal claim in state court.'").That is, in the present petition, Mr. Gwynne's cumulative error claim is based on the three evidentiary error claims he makes in the petition: the State used improper identity evidence, Detective Munro's testimony was improper hearsay, and Deputy Hernandez gave false testimony to the jury regarding the evidence. On direct appeal, his cumulative error claim was largely based on different evidentiary error claims made in that appeal: the State relied on testimony of prior sexual contact to prove conformity, improper opinion testimony from Detective Munro regarding altered screenshot images, and Deputy Hernandez made repeated references to a second victim.

9.2, 10.1, and 10.2.[9] Likewise, Mr. Gwynne has failed to exhaust the claims which he included in his state habeas petition, but which he did not include in the petition for writ of certiorari to the New Mexico Supreme Court. These claims are: 6.1, 7.1, 7.2, 7.7, 8.2, and 8.4. *See Selsor*, 644 F.3d at 1026 ("To exhaust a claim, a state prisoner must pursue it through one complete round of the State's established appellate review process." (internal quotation marks and citation omitted)); NMRA 5-802(N) (providing for an appeal of state habeas petitions by filing a petition for certiorari with the New Mexico Supreme Court).

In sum, I recommend finding that Mr. Gwynne only exhausted six of the 31 claims for relief included in his present petition. As to the unexhausted claims, Mr. Gwynne, who bears the burden, makes no argument that exhaustion of those claims would be futile because of an absence of an available state corrective process or because circumstances exist that render such process ineffective to protect his rights. *See* 28 U.S.C. § 2254(b)(1)(B); *Selsor*, 644 F.3d at 1026. Mr. Gwynne's petition, thus, is a mixed petition, containing both exhausted and unexhausted claims.

"Generally, a federal court should dismiss unexhausted claims without prejudice so that the petitioner can pursue available state-court remedies." *Grant v. Royal*, 886 F.3d 874, 891–92 (10th Cir. 2018) (internal quotation marks and citation omitted). That rule, however, is not

---

[9] Some of these claims are for ineffective assistance of appellate counsel which Mr. Gwynne, obviously, could not include in his direct appeal as those claims are allegations that his counsel on direct appeal provided ineffective assistance. However, Mr. Gwynne presents no arguments to excuse his failure to present those claims in his pro se state post-conviction habeas proceedings. Indeed, some "New Mexico cases endorse [NMRA] 5–802 habeas corpus proceedings as the preferred avenue for adjudicating ineffective assistance of counsel claims." *Duncan v. Kerby*, 1993-NMSC-011, ¶ 4, 851 P.2d 466, 468 (citing *State v. Powers,* 1990-NMCA-108, ¶ 5, 800 P.2d 1067, 1069; *State v. Stenz,* 1990-NMCA-005, ¶ 12, 787 P.2d 455, 458). Thus, I recommend finding that Mr. Gwynne has failed to exhaust those claims.

absolute and a district court faced with a petition containing both exhausted and unexhausted

claims—i.e., a mixed petition—can

> "(1) dismiss the entire petition without prejudice in order to permit exhaustion of
> state remedies, or (2) deny the entire petition on the merits." *Moore v. Schoeman*,
> 288 F.3d 1231, 1235 (10th Cir. 2002). The court may also permit the petitioner to
> delete the unexhausted claim from his petition and proceed only on the exhausted
> claims, *Rose v. Lundy*, 455 U.S. 509, 510 (1982), or, if the equities favor such an
> approach, it may stay the federal habeas petition and hold it in abeyance while the
> petitioner returns to state court to exhaust the previously unexhausted claims,
> *Rhines v. Weber*, 544 U.S. 269, 279 (2005).

*Wood v. McCollum*, 833 F.3d 1272, 1273 (10th Cir. 2016).

Here, the State waives the exhaustion requirement and asks that the Court consider and

deny the entire petition on the merits. Doc. 10 at 1; *see also* 28 U.S.C. § 2254(b)(3) ("A State

shall not be deemed to have waived the exhaustion requirement or be estopped from reliance

upon the requirement unless the State, through counsel, expressly waives the requirement."). In

light of this waiver, and, as discussed below, given that I find none of the unexhausted claims

meritorious, I recommend that the Court proceed under option two and deny the entire petition

on the merits. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be

denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies

available in the courts of the State."); *Richwine v. Romero*, 462 F. App'x 770, 773 (10th Cir.

2011) ("[I]t would be an unusual step for a court to dispose of a case on exhaustion grounds sua

sponte after the state has expressly waived an exhaustion defense.") (internal quotation marks

and citation omitted).

## 2. Procedural Default

Although the State waives the issue of exhaustion, it does argue that the claims which

Mr. Gwynne raised in his state habeas petition but did not reassert in his petition for writ of

certiorari to the New Mexico Supreme Court are barred under the doctrine of anticipatory

procedural default. Doc. 10 at 16. Procedural default is an important corollary to exhaustion and it "prevents a federal court from reviewing the merits of a claim—including constitutional claims—that a state court declined to hear because the prisoner failed to abide by a state procedural rule." *Williams v. Trammell*, 782 F.3d 1184, 1212 (10th Cir. 2015) (internal quotation marks and citation omitted). Anticipatory procedural bar "occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it." *Anderson v. Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) (internal quotation marks and citation omitted). Procedurally defaulted claims are "technically exhausted," but "exhaustion in this sense does not automatically entitle the habeas petitioner to litigate his or her claims in federal court. Instead, if the petitioner procedurally defaulted those claims, the prisoner generally is barred from asserting those claims in a federal habeas proceeding." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006).

As discussed above, Mr. Gwynne included claims 6.1, 7.1, 7.2, 7.7, 8.2, and 8.4 in his state post-conviction habeas petition but he did not include them in his petition for writ of certiorari to the New Mexico Supreme Court. Under New Mexico Rules, habeas petitions are appealed by filing a petition for certiorari with the New Mexico Supreme Court, which must be done within 30 days after the district court's order denying the petition. NMRA 5-802(N); NMRA 12-501(B). Here, the state district court issued its order denying the petition for writ of habeas corpus on February 11, 2021. Doc. 10-2 at 648 (Ex. EEE). As more than 30 days has passed since that Order without Mr. Gwynne raising these certain claims with the New Mexico Supreme Court—the court to which he would be required to present his claims in order to meet the exhaustion requirement—his claims would be procedurally barred if he returned to the New Mexico Supreme Court. *See Ogden v. Bravo*, 35 F. App'x 722, 726 (10th Cir. 2002) (holding

that the petitioner failed to timely file a petition for writ of certiorari following the denial of his

habeas petition and his "failure in this regard means that the thirty-six issues first raised in his

state habeas petition were never addressed by the NMSC and are now procedurally defaulted for

purposes of federal habeas review"); *Thomas v. Gibson*, 218 F.3d 1213, 1221 (10th Cir. 2000)

("[I]f a petitioner failed to exhaust state remedies and the court to which the petitioner would be

required to present his claims in order to meet the exhaustion requirement would now find the

claims procedurally barred the claims are considered exhausted and procedurally defaulted for

purposes of federal habeas relief." (internal quotation marks and citation omitted)); *Anderson v.

Sirmons*, 476 F.3d 1131, 1140 n.7 (10th Cir. 2007) ("Anticipatory procedural bar occurs when

the federal courts apply procedural bar to an unexhausted claim that would be procedurally

barred under state law if the petitioner returned to state court to exhaust it." (internal quotation

marks and citation omitted)).

Mr. Gwynne makes no showing that procedural default should not apply to these claims.

*See Fontenot v. Crow*, 4 F.4th 982, 1028 (10th Cir. 2021) ("In all cases in which a state prisoner

has defaulted his federal claims in state court pursuant to an independent and adequate state

procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate

cause for the default and actual prejudice as a result of the alleged violation of federal law, or

demonstrate that failure to consider the claims will result in a fundamental miscarriage of

justice.") (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). I, therefore, recommend

finding that the claims Mr. Gwynne failed to timely appeal to the New Mexico Supreme Court

(claims 6.1, 7.1, 7.2, 7.7, 8.2, and 8.4) are procedurally defaulted and therefore barred from federal review.[10]

## LEGAL STANDARD

Under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, a federal court may only grant a state prisoner's petition for a writ of habeas corpus where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Pursuant to Section 2254(d), when the prisoner's claims have been adjudicated on the merits in state court, such a petition can only be granted if the state court's decision was contrary to, or unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Such review must be "highly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

> [E]ven a strong case for relief does not mean the state court's contrary conclusion
> was unreasonable. If this standard is difficult to meet, that is because it was meant
> to be. . . . [Section] 2254(d) stops short of imposing a complete bar on federal-
> court relitigation of claims already rejected in state proceedings. It preserves
> authority to issue the writ in cases where there is no possibility fairminded jurists
> could disagree that the state court's decision conflicts with this Court's
> precedents. It goes no further. Section 2254(d) reflects the view that habeas
> corpus is a guard against extreme malfunctions in the state criminal justice
> systems, not a substitute for ordinary error correction through appeal.

---

[10] The State does not argue, and I do not find, that anticipatory procedural bar applies to the other unexhausted claims, which Mr. Gwynne failed to raise in any state court proceeding. This is because New Mexico provides courts discretion in whether to allow second and successive habeas petitions, NMRA 5-802(I), and there is no statute of limitations for habeas petitions challenging a conviction or sentence for which the petitioner is currently confined, *see State v. Sutphin*, 2007-NMSC-045, ¶ 12, 164 P.3d 72. Thus, even though Mr. Gwynne has already filed a state habeas petition, if he now returned to state court and filed a new habeas petition with those claims not previously presented to the state court, his petition would not necessarily be barred under state law.

*Harrington v. Richter*, 562 U.S. 86, 102-03 (2011) (citations and internal quotation marks omitted). "The petitioner carries the burden of proof." *Cullen*, 563 U.S. at 181.

A § 2254(d)(1) analysis requires two steps: "First, as a 'threshold matter,' we must determine 'what constitutes clearly established Federal law, as determined by the Supreme Court of the United States.'" *Andrew v. White*, 62 F.4th 1299, 1310–11 (10th Cir. 2023) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003)). "In step two, we consider whether the state court decision was contrary to or an unreasonable application of that clearly established federal law." *Id.* at 1311 (internal quotation marks and citation omitted). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision "unreasonably applies" clearly established federal law if it "correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Id.* "Where . . . the state court's application of governing federal law is challenged, it must be shown to be not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Welch v. Workman*, 639 F.3d 980, 1010 (10th Cir. 2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."

*Harrington*, 562 U.S. at 101. The state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). Indeed, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning" at all. *Harrington*, 562 U.S. at 98; *see also Cullen*, 563 U.S. at 187 ("Section 2254(d) applies even where there has been a summary denial."); *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999) ("[W]e owe deference to the state court's *result*, even if its reasoning is not expressly stated.") (emphasis in original).

When determining whether a state decision was based on an unreasonable determination of facts in light of the evidence presented, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Welch*, 639 F.3d at 991 ("We presume the factual findings of the state court are correct unless the petitioner rebuts that presumption by clear and convincing evidence.").

## MERITS ANALYSIS

Turning to the merits of the claims that are not procedurally barred, I address each in turn, grouping together related issues. Because I group together related issues, many of the claims are out of order from the way Mr. Gwynne presented them in his petition. To the extent an ineffective assistance of counsel claim relates to the merits of a separate claim not based on ineffective assistance of counsel, I address the merits of the claim before addressing the ineffective assistance of counsel aspect of the claim.

For exhausted claims adjudicated on the merits in state court, for which this Court must determine if the state court's decision was contrary to, or unreasonably applied, clearly established federal law or if the state court's decision was based on an unreasonable determination of the facts, I review the New Mexico Court of Appeal's decision on direct appeal (Doc. 10-1 at 286-327, Ex. GG) and the state district court's preliminary disposition order (Doc. 10-1 at 477-78, Ex. VV) and findings of fact and conclusions of law (Doc. 10-1 at 521-26, Ex. BBB) in the post-conviction proceedings. I do so because the state's highest court, the New Mexico Supreme Court, denied writs of certiorari on both the direct appeal and the habeas appeal without offering an explanation, and so I "'look through' that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1190 (2018).

### 1.  Double Jeopardy Claim (No. 1.2)

Mr. Gwynne asserts that his convictions violate the law against double jeopardy because "[t]he State failed to provide evidence of the intent to manufacturing of the duplication of the same video on the same device other than two different dates" [sic]. Doc. 1 at 6. As background, trial testimony established that three videos were extracted from Mr. Gwynne's cellphone: (1) a video with an associated date of January 18, 2013, titled "Us"; (2) a video with an associated date of January 26, 2013, titled "Video005"; and (3) a video with an associated date of January 18, 2013, titled "Video006." Jury Trial CD at 5:26:53 to 5:31:17 (June 2, 2014). The Corrected Third Amended Criminal Information charged Mr. Gwynne with: (1) possession on January 28,

2013;[11] (2) manufacturing on January 26, 2013; and (3) manufacturing on January 18, 2013. Doc. 10-1 at 26 (Ex. K).

Mr. Gwynne raised a similar double jeopardy issue on direct appeal, where he explained that he was charged with possession for a video titled "Us" and manufacturing for a video titled "Video005." Doc. 10-1 at 191 (Ex. DD). However, "Us" is an exact replica of "Video005" and that "it is readily apparent that the two files are the exact same video twice and that "Us' was simply retitled." *Id.* at 191. He argued that the conduct at issue was unitary because "possession was the consequent result of the manufacture offense;" that is, Mr. Gwynne "could only have possessed the video 'Us' by virtue of its creation, and could not have manufactured the video without possessing the finished product of the manufacture count relating to 'Video005,' of which 'Us' is an identical duplicate." *Id.* at 193. And, he argued, because the possession statute is subsumed within the manufacture statute, the statutes are the same for double jeopardy purposes. *Id.* At 194.

The Double Jeopardy Clause of the Fifth Amendment protects, among other things, multiple punishments for the same offense. *United States v. Dixon*, 509 U.S. 688, 695-96 (1993). Under the *Blockburger* test for determining whether multiple punishment violate the right to be free from double jeopardy, "[t]he applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983) (quoting *Blockburger v.*

---

[11] Although none of the videos have an associated date of January 28, 2013, the New Mexico Court of Appeals explained that the Corrected Third Amended Criminal Information based the possession charge not on any specific video but on possession of child pornography on January 28, 2013, when Mr. Gwynne's cellphone was seized. Doc. 10-1 at 295-297 & n.4, 5.

*United States*, 284 U.S. 299, 304 (1932)). This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' within the Clause's meaning, and double jeopardy bars subsequent punishment or prosecution." *Dixon*, 509 U.S. at 688.

Here, to the extent Mr. Gwynne is again arguing that the possession and manufacturing charge involve duplicate videos and therefore violate his right to double jeopardy, the New Mexico Court of Appeals held that those charges are not the same offense. Doc. 10-1 at 293 (Ex. GG). Analyzing the issue under the "double description" theory and acknowledging that "the question of whether a defendant's conduct is unitary is not limited by the state's legal theory, but rather depends on the elements of the charged offenses and the facts presented at trial," Doc. 10-1 at 294 (cleaned up), the court reasoned that the State had "to provide different elements—and thus different facts—based on the charges stemming from acts on three different dates: manufacturing on January 18, manufacturing on January 26, and possession on January 28." *Id.* At 295. Further supporting the fact that the conduct was not unitary, the court held that the possession charge, although originally based on possession of the video "Us," was based at trial not on any particular video but on a possession of a collection of child pornography. *Id.* Thus, the New Mexico Court of Appeals concluded that there was sufficient evidence for the jury to infer that Mr. Gwynne "completed a separate act—possession of child pornography—that was sufficiently distinct from the previously completed acts of manufacturing," and his convictions do not violate his right to be free from double jeopardy. *Id.* at 297, 299.

To the extent Mr. Gwynne is arguing in his present habeas petition that the two manufacturing charges (as opposed to the manufacturing and possession charges) violate his right to be free from double jeopardy, *see* Doc. 14 at 3, the New Mexico Court of Appeals also

addressed this issue. It explained that the manufacturing charges involved videos created on different dates which "alone was sufficient to support each distinct elements contained in" the two manufacturing counts. *Id.* at 296.

Mr. Gwynne offers no argument to establish that the New Mexico Court of Appeal's holding is contrary to or an unreasonable application of clearly established federal law, or is based on an unreasonable determination of the facts. To the contrary, it is clear that the New Mexico Court of Appeals followed the *Blockburger* test to conclude that Mr. Gwynne's right to be free from double jeopardy was not violated.[12] Convictions for both possession and manufacturing do not violate the double jeopardy clause because those offenses contain distinct elements. Further, as the New Mexico Court of Appeals noted, Mr. Gwynne's possession conviction is founded on images beyond those that served as the foundation for his manufacturing convictions. And, his manufacturing convictions involved distinct conduct committed on distinct dates. Thus, Mr. Gwynne was punished separately, for each manufacturing crime he committed rather than being punished twice for one manufacturing offense. I therefore recommend denying relief on this claim.

## 2. Evidentiary Error Claims (Nos. 2.2, 2.3, 2.4, 2.5)

In ground 2 of Mr. Gwynne's petition, he argues that evidentiary errors took place during his trial. Doc. 1 at 8-15. In the introduction paragraph to ground 2, Mr. Gwynne states that he received "ineffective assistance of counsel on Appeals by blind acceptance of the Prosecutor's facts also failure to investigate in the missing discovery forensics cellebrite extraction as testified

---

[12] While the New Mexico Court of Appeals did not cite *Blockburger*, or any other federal law, the state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002).

to that was said to have been from analysist Keith Clayton" [sic]. Doc. 1 at 9. But, when discussing the individual subclaims, Mr. Gwynne focuses his argument on evidentiary errors, not on his counsel's alleged deficient performance. *Id.* at 9-15. Thus, it is not clear if Mr. Gwynne intends to raise an ineffective assistance of counsel claim or claims for evidentiary issues themselves. In order to afford a liberal construction to Mr. Gwynne's pro se petition, *see Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), I read ground 2 as both a claim for ineffective assistance of appellant counsel for failure to raise evidentiary issues and claims for the evidentiary issues themselves. I begin by reviewing the evidentiary claims and will address the ineffective assistance of counsel claim later in this Order, with other ineffective assistance of counsel claims. As to evidentiary errors, Mr. Gwynne raises four claims: (2.2) the State used improper propensity evidence; (2.3) Detective Munro's testimony was improper hearsay; (2.4) Deputy Hernandez gave false testimony to the jury regarding evidence; and (2.5) cumulative error.

    a.  <u>Legal Standard</u>

Relief under § 2254 is only available to a person in state custody "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Indeed, "it is not the province of federal habeas courts to reexamine state-court determination on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Thus, when reviewing alleged evidentiary errors, this federal habeas court is limited to examining whether the challenged evidence "so infused the trial with unfairness as to deny due process of law." *Id.* at 75 (internal quotation marks and citation omitted); *see also Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) ("[O]f

course, federal habeas review is not available to correct state law evidentiary errors. As a habeas court, we sit only to vindicate an applicant's constitutional rights. Thus, [petitioner] is entitled to relief only if an alleged state-law error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process.") (cleaned up).

    b.  <u>Improper Propensity Evidence Claim (No. 2.2)</u>

In claim 2.2, Mr. Gwynne argues that the trial court allowed improper identification testimony by C.M. in violation of NMRA 11-404(B). Doc. 1 at 9. Mr. Gwynne exhausted this issue, as he raised it on his direct appeal to the New Mexico Court of Appeals.

As background, before his trial, Mr. Gwynne filed a motion in limine, seeking to exclude evidence of other bad acts. Doc. 10-1 at 23-25 (Ex. J). He explained that a witness, C.M., previously testified "concerning what she perceived as sexual activity between [Mr. Gwynne] and the alleged victim in this matter" that were unrelated to the conduct in the videos at issue in this case. *Id.* at 23 ¶ 2. This testimony, he argued, should be excluded under New Mexico Rule of Evidence 11-404 because it "consists of allegations of other bad acts being introduced for the sole purpose of showing that [Mr. Gwynne] acted in a manner consistent with those acts." *Id.* at 24 ¶¶ 4-5; *see also* NMRA 11-404(B)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."). After this same testimony came up at trial, the trial court excused the jury to elicit an offer-of-proof on the 404(B) evidence and ultimately, denied the motion in limine and allowed such testimony as identification evidence. *See* Doc. 10-1 at 183-84 (Ex. DD) (Defendant's brief in chief on direct appeal).

On direct appeal, the New Mexico Court of Appeals addressed this issue and was skeptical as to whether the State had met its burden to show that C.M.'s testimony regarding a

prior sexual encounter between Mr. Gwynne and the victim was proper identity evidence under NMRA 11-404(B)(2). Doc. 10-1 at 301-02. However, the court ruled that, even if admission of C.M.'s testimony was contrary to Rule 11-404(B), such error was harmless because there was not a "reasonable possibility the error affected [the] verdict." *Id.* at 302 (citing *State v. Tollardo*, 2012-NMSC-008, ¶¶ 36, 43, 275 P.3d 110). The court recited the evidence at trial supporting Mr. Gwynne's convictions and held that it "cannot say that there is a reasonable probability that [C.M.'s] testimony describing her observation of a sexual encounter between [victim] and [Mr. Gwynne] contributed to any of [Mr. Gwynne's] convictions." *Id.* at 304.

In his present petition, Mr. Gwynne again argues that the State did not meet its burden under NMRA 11-404(B) to allow such identity evidence and that C.M.'s "testimony prejudiced [him] by introducing the likelihood that [Mr. Gwynne] was the one in the video." Doc. 1 at 9.[13] However, Mr. Gwynne fails to show that this alleged error in state law was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process" such that he is entitled to federal § 2254 relief. *Hooks*, 689 F.3d at 1180. Indeed, Mr. Gwynne fails to address all the other evidence the New Mexico Court of Appeals referenced in support of its conclusion that Mr. Gwynne's case did not turn on the admission of the evidence about which he complains. That is, even assuming the trial court erred in denying Mr. Gwynne's motion to exclude this evidence, Mr. Gwynne fails to demonstrate that this error was so grossly prejudicial that it infected the trial and denied him the fundamental fairness that is the essence of due process. Likewise, he fails to show that the New Mexico Court of Appeal's

---

[13] In his reply, Mr. Gwynne argues for the first time C.M.'s improper testimony under Rule 404(B) is "prosecutorial misconduct." Doc. 14 at 4. Mr. Gwynne provides no further information and I recommend that the Court decline to address this issue raised for the first time in reply. *See Reedy v. Werholtz*, 660 F.3d 1270, 1274 (10th Cir. 2011) ("The general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief." (cleaned up)).

conclusion (that the trial court's error was harmless) was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts. I therefore recommend denying relief on this claim.

    c.   Claim that Detective Munro's Testimony was Hearsay (No. 2.3)

Next, Mr. Gwynne makes multiple arguments regarding his claim that Detective Munro's testimony was hearsay. As discussed above, although Mr. Gwynne did not include this claim in his direct appeal or his state habeas petition, he did include it in his appeal of the state habeas petition; thus, he has a colorable argument that he exhausted this claim. Whether exhausted or not, however, I recommend finding that the claim lacks merit.

First, Mr. Gwynne argues that "Detective Munro was allowed to testify over objection from defense counsel to hearsay testimony of the non-existent forensics 'Cellebrite' extraction." Doc. 1 at 10 (citing trial recording at 5:34:10). In the portion of the trial transcript that Mr. Gwynne cites, however, defense counsel objected to a question the prosecutor asked Detective Munro as improper expert testimony, which the court overruled. Jury Trial CD at 5:34:11 to 5:34:27 (June 2, 2014). Mr. Gwynne offers no further information to explain his hearsay argument.[14] Mr. Gwynne does assert that Detective Munro improperly testified about doing the cellphone extraction even though he is not a qualified expert in cellphone forensics. Doc. 1 at 10. But again, he offers no further information to support this assertion.

---

[14] While discussing the evidentiary issues, Mr. Gwynne summarily states that he was "prejudiced by prosecutorial misconduct for the falsified manufactured evidence and testimony presented to the jury by Detective Munro." Doc. 1 at 10. To the extent Mr. Gwynne is also trying to assert a claim for relief based on prosecutorial misconduct, I recommend rejecting such a claim as insufficiently briefed. *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th Cir. 1992) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point.") (quoting *Pelfresne v. Village of Williams Bay,* 917 F.2d 1017, 1023 (7th Cir. 1990)).

As to his argument that the Cellebrite extraction was non-existent, Mr. Gwynne argues that Detective Munro's testimony regarding the Cellebrite extraction was perjury and hearsay because "no Cellebrite extraction was ever done on a cellphone in this case." Doc. 1 at 11. But Deputy Hernandez testified at trial that he was present when Deputy Clayton used Cellebrite to copy the data from Mr. Gwynne's cellphone onto a CD, that Deputy Hernandez took possession of the CD when the extraction was complete, and that he viewed the recordings on the phone and the CD to ensure they were identical. Jury Trial CD at 4:41:02 to 4:42:02 (June 2, 2014). Mr. Gwynne offers no further information to explain his assertion that the Cellebrite extraction was never done.

Mr. Gwynne, however, did attach to his § 2254 petition a letter from Chaves County Sheriff's Office in which it explains that it conducted a search of a laptop computer that resulted in nothing as the computer's memory was wiped, but that it did not conduct any Cellebrite extractions of a cellphone. Doc. 1-1 at 1. Thus, it may be that Mr. Gwynne is confusing the Cellebrite cellphone extraction done by Deputy Clayton, of the Lea County Sheriff's Office with the attempted laptop extraction done by Chaves County Sheriff's Office. At trial, Deputy Hernandez clarified that the Cellebrite cellphone extraction was different than the attempted laptop extraction. Jury Trial CD at 4:40:39 to 4:41:21 (June 2, 2014). I therefore recommend rejecting Mr. Gwynne's argument that the Cellebrite extraction does not exist.

Lastly, Mr. Gwynne argues that "Detective Munro was not present when Keith Clayton from Chaves County Sheriff's [Office] was said to have done the Cellebrite forensic extraction on [Mr. Gwynne's] cellphone," but that Detective Munro testified as to handling a CD from the Cellebrite extraction and as to a report he prepared regarding the extraction. Doc. 1 at 9-10. Indeed, Detective Munro testified that he was not involved in downloading information from Mr.

29

Gwynne's cellphone; instead, Deputy Hernandez provided him with the CD from the Cellebrite extraction and the report of the extraction.[15] Jury Trial CD at 5:23:50 to 5:24:45, 6:05:55 to 6:06:10 (June 2, 2014). Detective Munro further testified that he created his own report based on the Cellebrite extraction information. *Id.* at 6:04:54 to 6:05:11. Mr. Gwynne argues that because Detective Munro was not present when Deputy Clayton conducted the extraction, Detective Munro's testimony about the extracted material is hearsay.[16] Doc. 14 at 4-5. However, hearsay involves a statement: "Hearsay [m]eans a statement that (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." NMRA 11-801. Mr. Gwynne does not explain how the Cellebrite extraction, which extracted videos off a cellphone, are statements that fall under the rule against hearsay. Indeed, the inculpatory evidence extracted from the cellphone consisted of images of sexual acts, not statements.[17]

---

[15] To be clear, Detective Munro testified that the Cellebrite report was not a report that any law enforcement officer created, but a report that Cellebrite itself generated as to the extracted data. *Id.* 6:05:20 to 6:05:56. Indeed, Mr. Gwynne attached as an exhibit to his petition an article titled "Mobile Phone Forensics: Understanding Cellebrite Extraction Reports," which explains that "Cellebrite will generate a series of reports once extraction is complete" that include information such as device information (name, type, phone number, serial number), call history, gallery, internet activity, and text communications. Doc. 1-4 at 4, 6-7.

[16] Mr. Gwynne also asserts for the first time in his reply brief that "[t]he evidence created and presented by Munro falls under the best evidence rule." Doc. 14 at 5; *see also id.* at 6-7 (reasserting the best evidence rule) As discussed above, I recommend that the Court decline to consider issues raised for the first time in reply.

[17] At trial, Mr. Gwynne argued that he was not the male depicted in these videos. Thus, identification, not authenticity of the videos, was at issue and Mr. Gwynne does not raise an authenticity argument in relation to Detective Munro's testimony. Even if he did, however, Deputy Hernandez testified that he watched the extraction happen and viewed the videos on the cellphone and that the extracted videos were identical to the cellphone videos. Jury Trial CD at 4:41:16 to 4:42:01 (June 2, 2014).

In sum, I recommend finding that this claim has no merit because Mr. Gwynne has failed to show that evidentiary errors surrounding Detective Munro's testimony so infused the trial with unfairness as to deny him due process of the law.

    d.  <u>Claim that Deputy Hernandez Gave False Testimony (No. 2.4)</u>

In this subclaim, Mr. Gwynne asserts multiple unexhausted arguments that I recommend rejecting because they lack merit. First, Mr. Gwynne argues that the State used Deputy Hernandez's testimony to misrepresent the State's physical evidence by doing a "bait-and-switch" as to the State's Exhibit 1. Doc. 1 at 11. Mr. Gwynne argues that the victim testified to the State's Exhibit 1, but then the State had Deputy Hernandez testify as to a different State's Exhibit 1.

The record below demonstrates that, as part of the victim's testimony, the State showed her its Exhibit 1 but did not then publish it to the jury. Jury Trial CD at 3:41:55 to 3:42:15 (June 2, 2014). The victim identified the exhibit as a video taken from Mr. Gwynne's cellphone. *Id.* 3:52:09 to 3:52:34. The record further shows, when Deputy Hernandez testified, the State asked him to identify State's Exhibit 1, but initially produced the wrong exhibit—a return from Chavez County Sheriff's Office regarding a laptop. *Id.* at 4:37:09 to 4:37:43. The State then corrected this error by locating the correct Exhibit 1, which Deputy Hernandez identified as a cellphone video. *Id.* at 4:39:22 to 4:39:58; *see also* Doc. 10-1 at 55 (Ex. Q) (Receipt of Exhibits, showing trial exhibit 1 as "video"). Although the State did initially identify the wrong exhibit as Exhibit 1, the State corrected this error before moving to publish it for the jury. *Id.* at 4:40:12 to 4:40:24. In sum, the State showed the same exhibit to the victim and Deputy Hernandez and did not pull a "bait-and-switch."

Mr. Gwynne next argues that Deputy Hernandez's testimony regarding the video was false because the letter from the Chavez County Sheriff's Office states that no forensic Cellebrite extraction took place. Doc. 1 at 12. Contrary to Mr. Gwynne's representation, however, the letter from the Chavez County Sheriff's Office discussed an attempted laptop extraction; it did not discuss the Cellebrite cellphone extraction done by Deputy Clayton of the Lea County Sheriff's Office and observed by Deputy Hernandez. I thus recommend rejecting Mr. Gwynne's argument that Deputy Hernandez gave false testimony regarding the video.

Mr. Gwynne also asserts that the video lacked a chain of custody and that the model numbers in the Cellebrite report do not match any of the cellphones seized from Mr. Gwynne. Doc. 1 at 13, 14. At trial, Mr. Gwynne's counsel raised these same issues, first objecting to the foundation of the video. Jury Trial CD at 4:40:13 to 4:41:32 (June 2, 2014). In response, Deputy Hernandez testified that Deputy Clayton conducted the cellphone extraction by using Cellebrite, which is "an actual box" that is hooked up to the phone for extraction. *Id.* at 4:41:03 to 4:41:22. He further testified that although Deputy Clayton conducted the Cellebrite extraction from the cellphone, he was present for the extraction, took possession of the CD after extraction, and viewed the cellphone and the CD to confirm they were identical. *Id.* at 4:41:16 to 4:42:01. The trial court also allowed defense counsel to conduct voir dire of Deputy Hernandez regarding the video. *Id.* at 4:43:26 to 5:04:14. During this testimony, some confusion arose regarding numbers used to identify the cellphone in the search warrant inventory list that did not match numbers used to identify the cellphone in the Cellebrite report. *Id.* at 4:45:52 to 4:48:21. The State clarified that the numbers do not match because the Cellebrite report contains the cellphones' model numbers while the search warrant inventory uses the serial numbers to identify the cellphones. *Id.* at 4:50:27 to 4:50:45. Defense counsel then withdrew its foundation objection. *Id.*

at 5:11:00 to 5:11:11. In his present petition, Mr. Gwynne offers no further argument as to the chain of custody objection or the model/serial number confusion. That is, he does not address Deputy Hernandez's testimony regarding the chain of custody or the State's explanation that the numbers on the Cellebrite report do not match the numbers on the search warrant inventory because the Cellebrite report references the cellphone's model number whereas the search warrant inventory references the cellphone's serial number.

 In sum, I recommend finding that Mr. Gwynne's unexhausted claim regarding Deputy Hernandez has no merit because he has failed to show that evidentiary errors surrounding Deputy Hernandez's testimony so infused the trial with unfairness as to deny him due process of the law. That is, Mr. Gwynne has "failed to demonstrate the existence of a state-law error, much less a grossly prejudicial one." *Hooks v. Workman*, 689 F.3d 1148, 1180 (10th Cir. 2012) (internal quotation marks and citation omitted).

 Lastly, contained within claim 2.4, Mr. Gwynne raises an argument that he raised on direct appeal: Deputy Hernandez's reference to a second victim. Doc. 1 at 13-14. On direct appeal, Mr. Gwynne explained that:

> Defense counsel objected to the foundation for the videos in Exhibit 1, questioning the State's chain of custody for the CD as originating from [Mr. Gwynne's] cell phone. The court permitted voir dire of Investigator Hernandez. [6/2/14 4:40:20, 4:41:19-43:37] In questioning on an apparent cell phone serial number discrepancy, defense counsel presented Hernandez with a Cellebrite report showing what he believed was a different serial number than the one in the search warrant inventory. [4:46:26] The Investigator responded: "Sir, the victim in this is [M.J.] – has nothing to do with [Friend]. ... "Other victim [M.J.]. She was also a victim--." [4:47:53] At the court's own request, the jury was promptly excused, [4:48:25], but rather than question the propriety of testimony of a second victim, the parties only discussed the apparent serial number report used the *model* number instead and rescinded the foundation objection. [4:50:25-50:44, 5:03:38] [sic].

Doc. 10-1 at 175 (Ex. DD) (emphasis and alterations in original). On direct appeal, Mr. Gwynne argued that the testimony about a second victim was plain error. *Id.* at 176-78. The New Mexico Court of Appeals held that "it was not plain error to admit Deputy Hernandez's passing mention of another 'victim,'" and that "[w]hile it may have been error to allow Deputy Hernandez to testify as he did, . . . we are unconvinced that admission of the testimony constituted an injustice that create grave doubts concerning the validity of the verdict." Doc. 10-1 at 316 (Ex. GG) (internal quotation marks and citation omitted). In his present petition, Mr. Gwynne fails to show that this decision was contrary to or an unreasonable application of clearly established federal law or based on an unreasonable determination of the facts.

> e.   Cumulative Error Claim (No. 2.5)

Lastly, Mr. Gwynne argues that the cumulative evidentiary errors that occurred at trial deprived him of due process. Doc. 1 at 14-15. "A cumulative-error analysis aggregates all errors found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *Black v. Workman*, 682 F.3d 880, 913 (10th Cir. 2012). But here, the only potential harmless error is the one identified by the New Mexico Court of Appeal: C.M.'s propensity testimony. I recommend finding that all of Mr. Gwynne's other claims of evidentiary error lack merit. Given that there is only one possible harmless error at issue, the cumulative error doctrine does not apply.

**3.   Claim for Invasion of Privacy (No. 3)**

In claim 3, Mr. Gwynne argues that NMSA Section 30-6A-3(D), regarding sexual exploitation of children, is unconstitutional as applied in his case. Doc. 1 at 16. He explains:

> The State asserted that [Mr. Gwynne] was in a legal[,] consenting sexual relationship with [the victim] who was said at the time to be over 16 and under 18. At what point does a State have the constitutional right to the invasion of said relationship? Here the State charged [Mr. Gwynne] and sent him to prison for 19

> ½ years. He has 5-20 years of parole, and also has to register as a violent sex offender for life. For possessing and manufacturing of a private video of the said legal consenting sexual relationship. To which the video was never seen by anyone out side the relationship until the State[']s invasion in to said relationship. Does a State have the right to infring[e] into the privacy of the said relationship to obtain evidence to charge [Mr. Gwynne] for the purpose of Section 30-6A-3(D). . . . No one out side the two people in the videos knew about the videos until the State[']s intrusion on the privacy afforded by the United States Constitution [sic].

Doc. 1 at 17-18; *see also* Doc. 14 at 7-9. In other words, Mr. Gwynne is arguing that the State violated his constitutional right to privacy by obtaining videos that he created in a consenting, sexual relationship with a minor.

As an initial matter, I recommend finding that this issue is unexhausted. On direct appeal, Mr. Gwynne raised a similar issue but based his argument on a different legal principle: "Contrary to Constitutional guarantees of Equal Protection and Substantive Due Process, there is no rational basis for punishing Jason with second-degree manufacture and fourth-degree possession for recording a sex act to which the minor participant legally consented." Doc. 10-1 at 195 (Ex. DD). He explained that the sex act itself, with a consenting sixteen-year-old, was not a crime, but making a video of that sex act was such that he "was prosecuted for video-recording legal activity with a consenting sixteen-year-old, whereas another person who records the same exact legal activity with a consenting eighteen-year-old would not be prosecuted." *Id.* This disparate treatment, he argued, violated his right to equal protection without a rational basis. *Id.* at 195-200. This is a different legal theory than the one presented in his § 2254 petition. That is, in the present petition, Mr. Gwynne is arguing that the charges in his case violate his right to privacy, while on direct appeal he argued that those charges violated his right to equal protection. And in order for a claim to be exhausted, "a federal habeas petitioner [must] provide the state courts with a fair opportunity to apply controlling legal principles to the facts bearing upon his

constitutional claim," by raising the "substance of the federal claim in state court." *Grant v. Royal*, 886 F.3d 874, 890 (10th Cir. 2018) (internal quotation marks and citation omitted).

Because I find this issue unexhausted, I cannot apply the § 2254(d) standard—whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law.[18] However, I find that this claim fails on the merits, *see* § 2254(b)(2), because Mr. Gwynne does not point to any constitutional right or federal law that has been violated. That is, a § 2254 habeas petition may only be granted where the prisoner is held "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). And here, although Mr. Gwynne cites a generic "right to privacy," he fails to offer any specific Constitutional right or law that prevents the State from investigating and prosecuting claims of sexual exploitation of a child when he was engaged in a sexual relationship with a minor. To that end, even liberally construing this claim as one for a violation of substantive due process, Mr. Gwynne makes no showing that the State, in investigating his sexual relationship with a minor, acted in a way that was arbitrary or shocks the conscience. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 ("[T]he substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.") (internal quotation marks and citation omitted). I therefore recommend denying relief on this claim.

---

[18] Alternatively, if the Court disagrees and believes this claim is exhausted, I recommend that it fails under § 2254(d). On direct appeal, the New Mexico Court of Appeals held that Mr. Gwynne's equal protection claim failed because he did not establish that he was treated differently than similarly situated individuals. Doc. 10-1 at 319-22 (Ex. GG). In his present petition, Mr. Gwynne presents no arguments to meet his burden to show that this decision was contrary to or involved an unreasonable application of clearly established federal law, or that the decision was based on an unreasonable determination of the facts.

**4.  Insufficient Evidence Claim (No. 4)**

In claim 4, Mr. Gwynne argues that the evidence presented at trial was insufficient to support a conviction, mainly because the State failed to "show that the videos were manufactured on [Mr. Gwynne's] cellphone or even that [Mr. Gwynne] recorded the video[s] in the first place." Doc. 1 at 21. He also presented this claim on direct appeal to the New Mexico Court of Appeals, arguing that the State failed to prove he created and possessed the videos, or that he was the male in the video. Doc. 10-1 at 200-05 (Ex. DD).

The "Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). "In short, *Winship* presupposes as an essential [element] of the due process guaranteed by the Fourteenth Amendment that no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof—defined as evidence necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). In reviewing sufficiency of the evidence, a court must view the evidence in a light most favorable to the prosecution and determine if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (citation omitted). "And a state-court decision rejecting a sufficiency challenge may not be overturned on federal habeas unless the decision was objectively unreasonable," creating a "twice-deferential standard." *Parker v. Matthews*, 567 U.S. 37, 43 (2012) (internal quotation marks and citation omitted). In other words, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do

so only if the state court decision was 'objectively unreasonable.'" *Meek v. Martin*, 74 F.4th 1223, 1253 (10th Cir. 2023) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011)).

On direct appeal, the New Mexico Court of Appeals applied the *Jackson* standard to Mr. Gwynne's sufficiency of the evidence challenge.[19] Doc. 10-1 at 325-26 (Ex. GG). In doing so, it held that

> [Mr. Gwynne's] entire sufficiency challenge is premised on reweighing the evidence, attacking the credibility of witnesses, and relying on evidence and inferences that would support a different result. As such and because we have previously reviewed at length the evidence that was presented in this case that supports [Mr. Gwynne's] convictions for both manufacturing and possession of child pornography, we see no need to rehash that evidence here. We hold that sufficient evidence supports each of [Mr. Gwynne's] convictions.

Doc. 10-1 at 326-27.

In his present petition, Mr. Gwynne fails to offer any argument to establish that this holding is objectively unreasonable. Instead, mirroring his evidentiary error claims, Mr. Gwynne argues that the Cellebrite extraction report from the Chaves County Sherriff's Office does not exist and that multiple witnesses perjured themselves when testifying about the non-existent Cellebrite report. Doc. 1 at 21-22; *see also* Doc. 14 at 9. But as discussed above, Mr. Gwynne appears to be confusing the Cellebrite cellphone extraction done by Deputy Clayton of the Lea County Sheriff's Office and an attempted laptop extraction done by Chaves County Sheriff's Office. As set forth above, both the victim and Mr. Hernandez discussed the video evidence against Mr. Gwynne and the State presented this evidence for the jury to consider. Thus, Mr. Gwynne's argument that evidence the State presented to the jury did not actually exist, is

---

[19] Although the New Mexico Court of Appeals did not actually cite *Jackson*, it did cite parallel New Mexico cases that apply the same standard. *See* Doc. 10-1 at 326; *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (holding that the state court need not cite to United States Supreme Court cases, or even be aware of them, "so long as neither the reasoning nor the result of the state-court decision contradicts them").

specious. Because Mr. Gwynne fails to meet his burden to show that the state court's decision

was contrary to or an unreasonable application of the *Jackson* standard, I recommend denying

relief on this claim.

**5.   Claim of Illegal Search and Seizure (No. 5.1)**

In ground five, Mr. Gwynne argues that "Deputy Hernandez was able to obtain a warrant

for search and seizure of [Mr. Gwynne's] property ten days after Deputy Hernandez had already

taken possession of [Mr. Gwynne's] property." Doc. 1 at 26. Mr. Gwynne raised this same issue

in his habeas petition to the state trial court and in appeal to the New Mexico Supreme Court

such that it is exhausted. *See* Doc. 10-1 at 347-50 (Ex. JJ) (habeas petition); Doc. 10-1 at 479-80

(Ex. WW) (supplement to habeas petition); Doc. 10-1 at 530-31 (Ex. CCC, petition for writ of

certiorari to the New Mexico Supreme Court).

In his state habeas petition, Mr. Gwynne explained that law enforcement conducted a

search and seizure of his property on January 18, 2013. Doc. 10-1 at 348. However, the warrant

for the search and seizure was not signed by the judge until January 28, 2013. *Id.* In his

supplement to the habeas petition, Mr. Gwynne further explained that Deputy Hernandez filled

out a Return and Inventory form and Search Warrant Investigatory form, listing items taken in

the search of Mr. Gwynne's house, and both are dated January 18, 2013. Doc. 10-1 at 479. He

goes on to explain that

> At trial, Detective Victor Hernandez testified that the Return and Inventory form
> showed the search took place on January 18, 2013. Trial Record, June 2, 2014,
> 4:20 p.m. He stated that the Return and Inventory was usually left at the scene
> after the search. Detective Hernandez later testified that the date was a mistake,
> and it should have stated January 28, 2013. Trial Record, June 2, 2014, 4:34-4:35
> p.m. He testified upon cross examination that the date on the Return and
> Inventory was a mistake, and he did not know why he wrote January 18, 2013.
> 4:44-4:45.
> . . .

> Mr. Gwynne will provide his own testimony regarding the search. Mr. Gwynne will testify that he was at his home when law enforcement arrived to search his home, and that he is certain the search took place on January 18, 2013. He will testify that he received the form on January 18, 2013, and not January 28, 2013.

*Id.*

After appointing counsel for Mr. Gwynne and holding an evidentiary hearing, the state trial court issued its Findings of Fact and Conclusion of Law:

> [Mr. Gwynne's] convictions rely in great part on video recordings found on a cellular telephone over which [Mr. Gwynne] had possession and control and viewed at trial by the jury . . . of sexual intercourse between [Mr. Gwynne] and a minor.
> One video recording was created on or about January 26, 2013, and a second video recording was created on or about January 18, 2013.
> Although the search warrant is dated January 28, 2013, the inventory associated with the search warrant bears a written date of January 18, 2013; this discrepancy forms the basis for the petitioner's petition.
> The question of inconsistent dates was presented to the jury at trial in the testimony of Deputy Victor Hernandez, who when examined about the date of January 18, 2013, on the inventory indicated that he had written the date in error. At trial Deputy Hernandez further testified that the correct date of the inventory was January 28, 2013, and that the mistake was inadvertent.
> [Mr. Gwynne] was afforded ample opportunity to cross examine Deputy Hernandez and to present evidence at trial on the discrepancy and correctness of dates.
> At trial, the jury was instructed that it was the sole judge of the credibility of the witnesses and that it had the authority to give testimony whatever weight it deemed appropriate.
> . . .
> The jury, having listened to a plausible explanation for the error in the date of the inventory to the search warrant, was within its lawful authority in accepting as credible the testimony of Deputy Hernandez.

Doc. 10-1 at 522-23 ¶¶ 3-9, C (Ex. BBB). The state court declined to "determine anew the credibility of witnesses or the weight to be accorded to the testimony and proof." *Id.* at 524 ¶ E. Thus, the court, finding no other violations of the federal or state constitution, finding that credibility of a witness does not provide a ground for post-conviction relief, and finding that

typographical errors do not invalidate search warrants, denied Mr. Gwynne's petition for writ of habeas corpus. *Id.* at 524-25 ¶¶ D, H, J.

"The Fourth Amendment protects '[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures,' but 'contains no provision expressly precluding the use of evidence obtained in violation of its commands.'" *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting U.S. Const. amend. IV; *Arizona v. Evans,* 514 U.S. 1, 10 (1995)). Nonetheless, Supreme Court "decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial." *Id.* "The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth Amendment rights. . . . [T]he rule is not a personal constitutional right." *Stone v. Powell*, 428 U.S. 465, 486 (1976). Applying the exclusionary rule to § 2254 cases, the Supreme Court has held that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976).[20] "'Opportunity for full and fair consideration' includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim." *Gamble v. State of Okl.*, 583 F.2d 1161, 1165 (10th Cir. 1978).

Here, I recommend finding that Mr. Gwynne had a full and fair opportunity to litigate this issue. First, he had a procedural opportunity to raise the search warrant issue in state court by filing a motion to suppress, but did not. Second, Deputy Hernandez testified at trial that he mis-

---

[20] While *Stone* was decided before the Antiterrorism and Effective Death Penalty Act of 1996, the Tenth Circuit has rejected an argument that *Stone* is no longer applicable after AEDPA. *See Herrera v. Lemaster*, 225 F.3d 1176, 1178 (10th Cir. 2000) ("We are not persuaded, however, that by enacting AEDPA Congress intended to expand in any way a habeas petitioner's right to overturn a state court decision.").

dated the Inventory form to January 18, when it should have been dated January 28, and Mr.

Gwynne's counsel had the opportunity to cross-examine him. Jury Trial CD at 4:33:54 to

4:35:16, 4:43:35 to 4:45:48 (June 2, 2014). Lastly, Mr. Gwynne had the opportunity to litigate

the issue in his state post-conviction proceedings, during which the state court held an

evidentiary hearing and both Mr. Gwynne and Deputy Hernandez testified. *See* Doc. 10-1 at 512-

20 (Exs. ZZ & AAA, both sides' proposed findings of fact and conclusions of law, reciting the

details of the evidentiary hearing). Thus, a review of the record indicates that Mr. Gwynne

"received an opportunity to fully and fairly litigate his Fourth Amendment claims." *McDaniel v.

State of Okl.*, 582 F.2d 1242, 1243 (10th Cir. 1978) (finding the petitioner had a full and fair

opportunity to litigate a Fourth Amendment suppression issue when, although he did not file a

motion to suppress, he objected to the evidence at trial, presented the issue on direct appeal, and

received an evidentiary hearing on the issue during post-conviction proceedings).

In his present petition, Mr. Gwynne appears to argue that he did not have an opportunity

for full and fair litigation of the Fourth Amendment claim for two reasons. First, he argues that

his trial counsel was ineffective for failing to move to suppress the "illegally taken" cellphone.

Doc. 1 at 27. Indeed, "[i]neffective assistance of counsel may deny a defendant [an] opportunity"

for full and fair litigation of the Fourth Amendment claim. *Lee Vang Lor*, 706 F.3d at 1258. Mr.

Gwynne is correct that his counsel did not file a pretrial motion to suppress based on the date of

the search warrant compared to the inventory form. *See generally* Doc. 10-2 at 653-58 (Ex. DS-

1, docket sheet). However, Mr. Gwynne makes no showing that his trial counsel's failure to file a

motion to suppress fell below an objective standard of reasonableness or that he was prejudiced

by the failure. *See Strickland v. Washington*, 466 U.S. 668, 687-88 (1984) (listing the elements

of an ineffective assistance of counsel claim: (1) "counsel's representation fell below an

objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense"). To the contrary, the search warrant itself is dated January 28, 2013, Doc. 1-1 at 19, and only the inventory return form is dated January 18, 2013, *id.* at 13-14. Further, one of the videos recovered from the phone has an associated date *after* January 18 (Video005, with an associated date of January 26, 2013). Being aware of this information, it would be reasonable for Mr. Gwynne's trial counsel to conclude the inventory form was simply misdated and that any motion to suppress he might file would fail.

Next, Mr. Gwynne argues that he did not have a full and fair opportunity to litigate this issue because the state court habeas judge "showed and expressed judicial bias and hostility towards" him. Doc. 1 at 27. Mr. Gwynne provides no further information as to how the judge showed bias and hostility. Instead, he proceeds to explain that he requested a CD of the January 6, 2020 appointment of counsel hearing in the post-conviction proceedings and the Court sent him a blank CD.[21] *Id.* at 27-28. But Mr. Gwynne fails to explain how his inability to access a recording of an appointment of counsel hearing denied him an opportunity to litigate the search warrant issue.

In sum, I recommend finding that Mr. Gwynne had an opportunity for full and fair litigation of his Fourth Amendment claim in state court such that federal habeas relief is not available to him on this claim. If, however, the Court disagrees that *Stone* applies (i.e., it finds that Mr. Gwynne did not have a full and fair opportunity to litigate the Fourth Amendment claim), I still recommend that his claim fails under § 2254 (d)(1). *See Herrera v. Lemaster*, 225

---

[21] The March 6, 2020 letter from the Fifth Judicial District that Mr. Gwynne attached to his habeas petition indicates not that the court sent Mr. Gwynne a blank CD, but that the FTR format used by the court for audio records is not compatible with the law library Mr. Gwynne had access to and, as such, the court instructed that he could request a paper copy. Doc. 1-1 at 65.

F.3d 1176, 1178 (10th Cir. 2000) (finding that the petitioner did not receive full and fair consideration of his Fourth Amendment claim in state court and so addressing the merits of the claim under § 2254(d)(1)). Mr. Gwynne fails to offer any arguments to meet his burden of showing that the state court's decision on state habeas review was contrary to or an unreasonable application of clearly established federal law. For these reasons, I recommend denying relief on this claim.

**6.  Brady Violation Claims (Nos. 8.1, 8.3)**

In his eighth ground for relief, Mr. Gwynne asserts that the State committed various *Brady* violations. As discussed above in the "procedural default" section, I recommend finding that two of those claims— (8.2) failure to disclose report by Officer Hardison and (8.4) failure to disclose reports by Detective Munro—are procedurally barred. I will thus only address his other two subclaims—(8.1) failure to disclose authentication documents of the cellphone video and (8.3) failure to disclose report by Officer Vinson.

a.  Legal Standard

Under *Brady v. Maryland*, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. 83, 87 (1963). "*Brady*'s holding has since been extended to require disclosure by the prosecutor even when the defendant has not requested the withheld material or has made only a general request, and to cover impeachment evidence as well as exculpatory evidence." *United States v. Erickson*, 561 F.3d 1150, 1162 (10th Cir. 2009) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976) and *United States v. Bagley*, 473 U.S. 667, 676 (1985)). "To establish that a *Brady* violation undermines a conviction, a convicted defendant must make each of three showings: (1) the

44

evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the State suppressed the evidence, either willfully or inadvertently; and (3) prejudice ensued." *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) (internal quotations and citations omitted). "Prejudice satisfying the third element exists when the suppressed evidence is material for *Brady* purposes." *Fontenot v. Crow*, 4 F.4th 982, 1080 (10th Cir. 2021) (internal quotation marks and citation omitted). "Evidence is material within the meaning of *Brady* when there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different." *Turner v. United States*, 582 U.S. 313, 324, (2017) (internal quotations and citations omitted). "A reasonable probability of a different result is one in which the suppressed evidence undermines confidence in the outcome of the trial." *Id.* (internal quotations and citations omitted).

  b. <u>Claim of Failure to Disclose Cellphone Video Authentication Documents (No. 8.1)</u>

   Mr. Gwynne first asserts that the State violated its *Brady* obligations when it failed to disclose authentication documents for the forensic Cellebrite extraction of his cellphone. Doc. 1 at 42. This issue is exhausted because Mr. Gwynne raised it in his state habeas petition and in his petition for writ of certiorari to the New Mexico Supreme Court. When addressing the habeas petition, the state court summarily rejected this claim as lacking merit. Doc. 10-1 at 477 (Ex. VV). The § 2254(d) standard (whether the state court decision is contrary to or unreasonable application of clearly established law or based on an unreasonable determination of the facts) applies to claims adjudicated on the merits by the state court. And, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Here, Mr.

Gwynne presents no arguments to overcome that presumption, and so I will evaluate this claim under the § 2254(d) standard. *See Ryder ex rel. Ryder v. Warrior*, 810 F.3d 724, 740 (10th Cir. 2016) ("[W]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." (internal quotation marks and citation omitted)).

In his present petition, Mr. Gwynne argues that "Keith Clayton was the analyst from Chavez County Sheriff's Office that was said to have removed the videos from [his] cellphone. [Mr. Gwynne] knew nothing of Keith Clayton or Chaves Sheriff's Office removing videos from [his] cellphone until it was testified to at trial" [sic]. Doc. 1 at 42. During trial Mr. Gwynne's defense attorney showed the Cellebrite report to a witness during questioning, indicating the defense did, indeed, at least have the report at the time of trial. Jury Trial CD at 4:46:32 to 4:46:47 (June 2, 2014). Even if this information was not disclosed until after trial started, however, and even if such disclosure was too late to be considered timely under *Brady*, Mr. Gwynne has failed to demonstrate how this information was exculpatory. The videos about which Mr. Gwynne complains were central to the State's prosecution of Mr. Gwynne; thus, this evidence was inculpatory rather than exculpatory. And, Mr. Gwynne makes no argument about how the information he learned about Deputy Clayton's involvement in the extraction of these videos from his cellphone was exculpatory. To the extent Mr. Gwynne's *Brady* argument is based on the allegedly delayed disclose of Deputy Clayton's involvement in the cellphone extractions, his argument therefore fails.

To the extent Mr. Gwynne's *Brady* argument is based on the Chavez County Sheriff Office's alleged extraction of videos from his cellphone, it is based on an invalid factual premise. Nothing in the record indicates that the Chavez County Sheriff's Office removed videos from

Mr. Gwynne's cellphone. As with his evidentiary error arguments, Mr. Gwynne appears to be confusing the Cellebrite cellphone extraction done by Deputy Clayton of the Lea County Sheriff's Office with an attempted laptop extraction done by Chavez County Sheriff's Office.

In sum, Mr. Gwynne fails to show that the State suppressed exculpatory evidence, much less that the state court's rejection of his claim was contrary to or an unreasonable application of *Brady* or was based on an unreasonable determination of the facts.

    c.   <u>Claim of Failure to Disclose Report by Officer Vinson (No. 8.3)</u>

Mr. Gwynne next argues that the State violated its *Brady* obligations by failing to disclose a report by Officer Vinson. Doc. 1 at 45. Although Mr. Gwynne raised similar claims in his state habeas petition, such as failure to disclose witness statements and other police reports, he did not raise the substance of this claim in state court, *see* Doc. 10-1 at 364-66 (Ex. JJ), and so this claim is unexhausted. Reviewing this unexhausted claim, I recommend finding that it fails on the merits.

Mr. Gwynne argues that the State failed to disclose a police report from March 10, 2013 by Officer Vison regarding a different investigation but involving the same victim at the center of his case. Doc. 1 at 45-46; *see also* Doc. 1-1 at 38-39 (police report). In this report, Deputy Vinson describes contacting a lost person who reported that she had been staying with Mr. Gwynne and that an unknown third person solicited sex from her in exchange for heroin. Doc. 1-1 at 38-39. Even assuming that this police report is exculpatory and that the State failed to disclose it, I recommend rejecting this *Brady* claim because Mr. Gwynne does not make a showing of prejudice. Mr. Gwynne argues that "what's in this report is what the State insinuated to the jury that [Mr. Gwynne] was guilty of," i.e., soliciting sex in exchange for drugs. Doc. 1 at 45. He therefore asserts that if he "had this report during trial, [he] would have been able to show

the jury where the State's sexual allegations came from." *Id.* at 46. This argument does not support a conclusion that there is a reasonable probability that, had the evidence been disclosed, the outcome of the case would have been different. That is, although Mr. Gwynne may have pointed to the other police report, it does little to undermine the testimony at trial from the victim, who testified that Mr. Gwynne was the male in the videos, and from Detective Munro, who testified about comparing the torso in the video to that of Mr. Gwynne and to another possible suspect initially identified by the victim. I therefore recommend the Court deny relief on this *Brady* claim.

### 7. Sixth Amendment Confrontation Clause Claim (No. 9.1)

Mr. Gwynne asserts that he was denied the right to confront Deputy Keith Clayton about the Cellebrite extraction of his cellphone. Doc. 1 at 50-51. He also raised this issue in his state habeas petition, Doc. 10-1 at 363 (Ex. JJ) which the state court summarily rejected as lacking merit, *id.* at 477 (Ex. VV), and in his petition for writ of certiorari to the New Mexico Supreme Court, *id.* at 531 (Ex. CCC), which the court also summarily denied, Doc. 10-2 at 652 (Ex. GGG). As discussed above, while the § 2254(d) standard only applies to claims adjudicated on the merits by the state court, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Here, Mr. Gwynne presents no arguments to overcome that presumption, and so I will evaluate this claim under the § 2254(d) standard.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Supreme Court has held that "testimonial statements of absent witnesses are inadmissible at trial unless the witness is

unavailable and the defendant has had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "Testimony in turn, is typically [a] solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* (quotation omitted). While the Supreme Court has not provided a laundry list of what is considered testimonial, it has held that testimony includes statements made with the primary purpose of establishing or proving past events potentially relevant to later criminal prosecution, *Davis v. Washington*, 547 U.S. 813, 822 (2006), and statements "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310 (2009) (citation omitted). Additionally, the Confrontation Clause applies to only testimonial, as opposed to non-testimonial, statements that are offered to prove the truth of the matter asserted. *See Tennessee v. Street*, 471 U.S. 409, 414 (1985).

Here, Mr. Gwynne correctly argues that both Deputy Hernandez and Detective Munro testified regarding the Cellebrite extraction of his cellphone, but neither actually conducted the extraction. Doc. 1 at 50-51. Deputy Clayton conducted the extraction and he did not testify and was not available for Mr. Gwynne to confront at trial. *Id.*; *see also* Doc. 14 at 10 ("[Mr. Gwynne] has the right to confrontation of the witness Deputy Clayton since he is the person that did the Cellebrite forensic extraction."). In *Bullcomings v. New Mexico*, the United States Supreme Court addressed the issue of "surrogate testimony." 564 U.S. 647 (2011). In that case, the Supreme Court clarified that an "analyst's certification prepared in connection with a criminal investigation or prosecution . . . is 'testimonial,' and therefore within the compass of the Confrontation Clause" such that "the analysts who write reports that the prosecution introduces must be made available for confrontation." *Id.* at 658–59, 661 (citing *Melendez-Diaz v.*

*Massachusetts*, 557 U.S. 305, 319, 321-24 (2009)).

Fatal to Mr. Gwynne's present claim is the fact that he makes no argument to meet his burden of showing that the state court's decision (which found his Confrontation Clause claim to be meritless) was contrary to or an unreasonable application of federal law (such as *Bullcomings*). First, a state court decision is "contrary to" clearly established federal law "if the state court . . . decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Here, the facts between *Bullcomings* and the present case are not materially indistinguishable. *Bullcomings* involved the State calling a surrogate to testify about a forensic laboratory report even though the surrogate "did not sign the certification or perform or observe the test reported in the certificate." 564 U.S. at 652. In this case, although the State did not call the person who completed the Cellebrite extraction (Deputy Clayton), it did call Deputy Hernandez who personally witnessed the extraction, took possession of the CD after extraction, and viewed videos from the cellphone and the CD to confirm they were identical. True, the State transferred this video to a different medium than Mr. Gwynne's cellphone. But, as Deputy Hernandez testified, he knows this transfer did not alter the data because he compared the video on Mr. Gwynne's phone to the extracted video and they were identical. *Bullcomings* is distinguishable first because it did not involve the simple transfer of data from one medium to another and instead involved "surrogate testimony." Here, because Deputy Hernandez personally compared the video on Mr. Gwynne's cellphone to the video presented to the jury through a different medium, and presented testimony himself that the videos were identical, his testimony cannot be fairly characterized as "surrogate testimony."

Second, a state court's decision unreasonably applies clearly established federal law

where the state court's application of governing federal law is "not only erroneous, but [also] objectively unreasonable." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003); *see also Bell*, 535 U.S. at 694 ("[A]n unreasonable application is different from an incorrect one."). As it applies to this case, many courts have held that *Bullcomings* and the Confrontation Clause do not apply to "reports containing only raw, machine-produced data." *United States v. Hill*, 63 F.4th 335, 358 (5th Cir. 2023) (collecting cases); *see also id.* at 357-59 (finding testimony about reports of information extracted from the defendants' cellphone did not implicate the Confrontation Clause because "machine statements aren't hearsay" and "[k]ey differences exist between test reports generated by a person's analysis and test reports which are the result of machine analysis"). Here, there is no evidence before the Court that the extraction and report produced by Deputy Clayton contained anything more than raw data from Mr. Gwynne's cellphone. To the contrary, Deputy Hernandez testified that Deputy Clayton used Cellebrite to extract data from a cellphone onto a CD and the Deputy Hernandez took possession of the CD. Jury Trial CD at 4:41:02 to 4:42:02 (June 2, 2014). Deputy Hernandez then provided Detective Munro with the CD and the written report from Cellebrite of the extraction,[22] and Detective Munro created a report of the extracted information. *Id.* at 5:23:50 to 5:26:40, 6:04:54 to 6:06:10.

For these reasons, and given Mr. Gwynne's failure to make any argument to meet the difficult burden under § 2254(d), I recommend denying relief on this claim. *See Williams v.*

---

[22] As discussed above related to evidentiary issues, Detective Munro testified that the Cellebrite report was not a report that any law enforcement officer created, but a report that Cellebrite itself generated as to the extracted data. *Id.* 6:05:20 to 6:05:56; *see also* Doc. 1-4 at 4, 6-7 (attachment to the present habeas petition titled "Mobile Phone Forensics: Understanding Cellebrite Extraction Reports," which explains that "Cellebrite will generate a series of reports once extraction is complete" that include information such as device information (name, type, phone number serial number), call history, gallery, internet activity, and text communications).

*Taylor*, 529 U.S. 362, 411 (2000) ("[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.").

### 8.  Claim of Actual Innocence (No. 10.1)

Mirroring the arguments about the cellphone video that he made with his claims for evidentiary errors and sufficiency of the evidence, Mr. Gwynne asserts a "free standing claim of actual innocence, independent of any Constitutional violation." Doc. 1 at 53. Mr. Gwynne did not present this claim to the state court on direct appeal or in his post-conviction proceedings and so it is unexhausted. However, I recommend finding that this claim lacks merit because "actual innocence does not constitute a freestanding basis for habeas relief." *Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019).

In *Herrera v. Collins*, the Supreme Court explained that "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the course of the underlying state criminal proceedings." 506 U.S. 390, 390–91 (1993). That is, a petitioner can use a claim of actual innocence as a gateway, allowing the petitioner "'to overcome a procedural bar' in order to assert distinct claims for constitutional violations." *Farrar*, 924 F.3d 1126, 1130 (10th Cir. 2019) (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). But a freestanding claim for actual innocence is not a basis for habeas relief. *Id.* at 1131; *see also Herrera*, 506 U.S. at 404 ("[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."). "This rule is grounded in the principle that federal habeas courts sit

to ensure that individuals are not imprisoned in violation of the Constitution-not to correct errors of fact."[23] *Herrera*, 506 U.S. at 400.

As discussed above, I recommend finding that some of Mr. Gwynne's claims (including Fourth Amendment unreasonable search, ineffective assistance of counsel, and *Brady* violations) that he included in a state habeas petition, but did not appeal to the New Mexico Supreme Court, are procedurally defaulted. Mr. Gwynne does not assert that a claim of actual innocence should allow him to overcome that procedural default such that he be allowed to argue the merits of those constitutional claims. That is, he does not assert actual innocence as a gateway claim; a process the Supreme Court has approved of. Instead, he clearly asserts actual innocence as a "freestanding claim . . . independent of any constitutional violations." Doc. 1 at 53. Because such a freestanding claim cannot be a basis for federal habeas relief, I recommend denying the petition on this ground.

### 9. Ineffective Assistance of Counsel Claims (Nos. 1.1, 2.1, 5.2, 6.2, 7.3, 7.4, 7.5, 7.6, 7.8, 7.9, 8.5, 9.2, 10.2)

Lastly, Mr. Gwynne brings a number of claims for ineffective assistance of counsel related to both his trial counsel and appellate counsel. I will address his various claims in turn, separately grouping the claims against trial counsel and those against appellate counsel.

a.  <u>Legal Standard</u>

It is well established that defendants have a Sixth Amendment right to effective counsel. *See Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). In order to establish an ineffective

---

[23] In his reply brief Plaintiff cites *Montoya v. Ulibarri*, in which the New Mexico Supreme Court held that "the New Mexico Constitution permits habeas petitioners to assert freestanding claims of actual innocence." 2007-NMSC-035, ¶ 25, 163 P.3d 476, 484. The court, however, recognized that this is a divergence from federal precedent as a freestanding claim of innocence is not cognizable under the federal constitution. *Id.* ¶¶ 17, 19.

assistance claim, a movant must demonstrate that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "the deficient performance prejudiced the defense." *Id.* at 687-88. Under the first prong, "the performance inquiry must be whether counsel's assistance was reasonable considering all circumstances." *Id.* at 688. However, review of an attorney's performance "must be highly deferential," and the court must "evaluate the conduct from counsel's perspective at the time." *Id.* at 689. The question to determine deficient performance "is whether [the] representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Simpson v. Carpenter*, 912 F.3d 542, 593 (10th Cir. 2018) (citing *Harrington*, 562 U.S. at 105). Under the second prong of the inquiry, the movant must establish prejudice by showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Courts may analyze either prong first and need only address one prong if the movant fails to make a sufficient showing on that prong. *Id.* at 697.

  b. Ineffective Assistance of Trial Counsel Claims (Nos. 7.3, 7.4, 7.5, 7.6, 7.8)

  In his seventh ground for relief, Mr. Gwynne raises a number of claims for ineffective assistance of trial counsel Doc. 1. As discussed above, I recommend finding that some of the claims (claims 7.1, 7.2, 7.7) are procedurally defaulted such that they are barred from federal habeas relief. As to the other claims, Mr. Gwynne failed to include them in either his direct appeal or in his post-conviction proceedings, and so they are unexhausted. Even so, I recommend finding that these unexhausted claims fail on the merits.

  Claim 7.3. Mr. Gwynne asserts that "Counsel failed in allowing evidence from case 2023-3734 the said video. To use in case 2013-1558 that went to trial" [sic]. Doc. 1 at 37. This is

his entire argument on this point. As this argument is undeveloped and inadequate, I recommend

finding that it fails to meet his burden of showing that his counsel's performance fell below an

objective standard of reasonableness or that the deficient performance prejudiced him.

Claims 7.4 and 7.6. First, in claim 7.4, Mr. Gwynne asserts that his

> Counsel failed in allowing videos to be misrepresented to the jury as being off
> [Mr. Gwynne's] cellphone. When in Detective Munro's report show said video
> did not come from any cellphone taken from [Mr. Gwynne] at any time. Moreso
> videos are from a case that was closed 2013-3434[24] also videos are from a case
> that [Mr. Gwynne] was not charged for. [Sic]

Doc. 1 at 37. Relatedly, in claim 7.6, Mr. Gwynne argues that "Counsel allowed videos also

Munro's false Cellebrite report from an uncharged case moreso a closed case 2013-3734 to be

used in this case 2013-1558" [sic]. *Id.* at 38.

First, contrary to Mr. Gwynne's assertion that Detective Munro's report states that the

videos did not come from Mr. Gwynne's cellphone, Mr. Gwynne attached to his petition a report

by Detective Munro in which Detective Munro lists the videos and images as extracted from Mr.

Gwynne's cellphone. Doc. 1-1 at 43. And, contrary to his assertion that the videos came from a

case unrelated to him, the case he cites, no. 2013-3734, involved an investigation into the

conduct that Mr. Gwynne was convicted of at trial. *See* Doc. 1-1 at 15-18, 40-41, 43-48, 50.

Given that Mr. Gwynne has provided insufficient information regarding what conduct he

believes was ineffective, I recommend finding that Mr. Gwynne fails to meet his burden to show

that his counsel acted objectively unreasonable or that his counsel's performance prejudiced him.

Claim 7.5. Mr. Gwynne argues that

> Counsel failed in not cross-examining the States analyst Deputy Keith Clayton
> from Chavez Sheriff's office that was said to have done the Cellebrite Forensic

---

[24] There is nothing in the state court record or the documents Mr. Gwynne provided with his petition as to a case no 2013-3434. Given this, and given Mr. Gwynne's related statement in claim 7.6, I assume he intended to cite case no. 2013-3734.

Extraction on a cellphone in this case. [Mr. Gwynne] was unable to verify why
Munro's report at trial did not match any cellphones taken from [Mr. Gwynne] do
to no cross-examining the States analyst Deputy Keith Clayton to which allowed
the state to use evidence from the other case 2013-3734 that was not charged to
[Mr. Gwynne] [sic].

Doc. 1 at 37-38.

Mr. Gwynne is correct that his counsel did not call Deputy Clayton to testify at trial.

However, he fails to explain why this decision was objectively unreasonable or how he was

prejudiced. To the contrary, testimony at trial established that Deputy Clayton only conducted

the Cellebrite extraction from the cellphone and that Deputy Hernandez was present for the

extraction, took possession of the CD after extraction, and viewed the cellphone and the CD to

confirm they were identical. Trial CD at 4:41:16 to 4:42:01 (June 2, 2014). And Deputy

Hernandez did testify and was cross-examined by defense counsel. Additionally, to the extent

Mr. Gwynne is arguing that he was prejudiced by his counsel's failure to call Deputy Clayton

because he was not able to ask about the cellphone identification, the State explained at trial that

the cellphone serial numbers in the search warrant inventory list did not match the serial numbers

in the Cellebrite report because the Cellebrite report contains the cellphones' model numbers, not

serial numbers. *Id.* at 4:45:52 to 4:50:45. It is unclear what further information Mr. Gwynne

believes his counsel should have questioned Deputy Clayton about and he has thus failed to meet

his burden to establish ineffective assistance of counsel.

Claim 7.8. Lastly, Mr. Gwynne argues that

Counsel failed in allowing evidence from an illegal search and seizure more so
evidence thats from another case see: Case Docket M-26-FR-2013-00065 that was
(bindover) to D-506-CR-2013-00214. No search warrant was ever issued in this
case. This case is from polices report case number 2013-1558. The state was
allowed to do a Bait-N-Switch [sic].

Doc. 1 at 39. Mr. Gwynne, however, fails to state what evidence he believes his counsel should have sought to exclude. And contrary to his assertions, a search warrant was issued in this case, a copy of which Mr. Gwynne attached to his habeas petition. Doc. 1-1 at 19. Mr. Gwynne also fails to explain his "Bait-N-Switch" argument as the case number he listed as attached to another case (D-506-CR-2013-00214) is the case number attached to his case. *See* Doc. 10-1 at 1 (Ex. A). Thus, I recommend finding that Mr. Gwynne has failed to meet his burden to show that his counsel's performance feel below and objective standard of reasonableness or that he was prejudice by any alleged deficient performance.

    c.   <u>Ineffective Assistance of Appellate Counsel Claims (Nos. 1.1, 2.1, 5.2, 6.2, 7.9, 8.5, 9.2, 10.2)</u>

Mr. Gwynne argues that his appellate counsel was ineffective for failing to raise and properly argue a number of issues on direct appeal. When considering a claim for ineffective assistance of appellate counsel, the first prong of the *Strickland* test requires a showing "that [appellate] counsel unreasonably failed to discover [a] nonfrivolous issue[ ] and to file a merits brief raising [it]." *Milton v. Miller*, 744 F.3d 660, 669 (10th Cir. 2014) (citing *Smith v. Robbins,* 528 U.S. 259, 285 (2000)). Under the second *Strickland* prong, the petitioner "'must show a reasonable probability that, but for his counsel's unreasonable failure to' raise a particular nonfrivolous issue, 'he would have prevailed on his appeal.'" *Id.* (citing *Smith,* 528 U.S. at 285). In other words, "[t]o prevail on a claim of ineffective assistance of appellate counsel, a defendant must establish that counsel was objectively unreasonable in failing to raise or properly present a claim on direct appeal, and that there is a reasonable probability that, but for this unreasonable failure, the claim would have resulted in relief on direct appeal." *Fairchild v. Trammell*, 784 F.3d 702, 715 (10th Cir. 2015).

Claim 1.1. First, Mr. Gwynne argues that he had ineffective assistance of appellate counsel on the double jeopardy issue. He asserts that his counsel "failed to argue the two separate manufacturing counts under unit of prosecution." Doc. 1 at 6. Mr. Gwynne did not present this issue to the state court and so it is unexhausted. Even so, I recommend finding that it fails on the merits.

As background, and as discussed above, trial testimony established that three videos were extracted from Mr. Gwynne's cellphone: (1) a video with an associated date of January 18, 2013, titled "Us"; (2) a video with an associated date of January 26, 2013, titled "Video005"; and (3) a video with an associated date of January 18, 2013, titled "Video006." Jury Trial CD at 5:26:53 to 5:31:17 (June 2, 2014). The two manufacturing charges were based on "Video005," created January 26, 2013, and "Video006," created January 18, 2013. *See* Doc. 10-1 at 296 (Ex. GG, New Mexico Court of Appeal order on direct appeal); Doc. 10-1 at 26 (Ex. K) (corrected third amended criminal information). When addressing the double jeopardy issue on direct appeal, the New Mexico Court of Appeals explained that in New Mexico "[t]here are two types of multiple punishment cases: double description cases, in which the defendant is charged with violations of multiple statutes or statutory subsections that may or may not be deemed the same offense for double jeopardy purposes; and (2) unit of prosecution cases, in which a defendant is charged with multiple violations of the same statute based on a single course of conduct." Doc. 10-1 at 292 (Ex. GG). Because Mr. Gwynne was challenging the possession and manufacturing charges on direct appeal—i.e., two different subsections of NMSA § 30-6A-3—the court examined the issue under the double description theory, not unit of prosecution. *Id.*

In his present petition, Mr. Gwynne appears to be asserting that his counsel was ineffective for not also arguing that the two manufacturing charges (which were charged under

the same statute) violated his right to be free from double jeopardy under the unit of prosecution theory. Even assuming that appellate counsel acted unreasonably in failing to argue the unit of prosecution theory, Mr. Gwynne fails to make any showing that, but for his counsel's failure to raise this issue, there is a reasonable probability that he would have prevailed on such a theory. "In a unit-of-prosecution case, the defendant has been charged with multiple violations of a single statute based on a single course of conduct. The relevant inquiry . . . is whether the legislature intended punishment for the entire course of conduct or for each discrete act." *State v. Ramirez*, 2018-NMSC-003, ¶ 45, 409 P.3d 902, 914 (internal quotation marks and citation omitted). Mr. Gwynne offers no argument to establish that the two manufacturing charges, based on two videos created at two different times, are a single course of conduct under the charging statute (NMSA § 30-6A-3(D)).

To the contrary, the New Mexico Court of Appeals has held that a violation of NMSA § 30-6A-3(D) occurs "where a criminal defendant intentionally produces or copies a photograph, electronic image, or video that constitutes child pornography," such that each photograph the defendant took of the child victim was a discrete violation of the statute. *State v. Leeson*, 2011-NMCA-068, ¶ 17, 255 P.3d 401, 406. Likewise, each video Mr. Gwynne recorded is a discrete violation. And to the extent that Mr. Gwynne is arguing that the manufacturing charges are based on duplications of the same video, the Court of Appeals has held that "[t]he definition of 'manufacture' includes 'copying by any means' . . . . This indicates that the unit of prosecution for the charges at issue here is each copy of an electronic video file." *State v. Knight*, 2019-NMCA-060, ¶ 33, 450 P.3d 462, 470 (quoting § 30-6A-2(D)).

For these reasons, I recommend finding that Mr. Gwynne has failed to meet his burden for ineffective assistance of counsel under the *Strickland* test and the Court should deny relief on this claim.

Claim 2.1. Next, Mr. Gwynne argues that his appellate counsel provided ineffective assistance related to the alleged evidentiary issues because his counsel failed "to argue the facts clearly" and relied on the "false facts from the State." Doc. 1 at 8. Mr. Gwynne did not raise this issue on appeal, so it is unexhausted. In any event, I recommend that the Court find this claim fails on the merits because Mr. Gwynne fails to meet his burden under the *Strickland* test.

Mr. Gwynne elaborates that he "had ineffective assistance of counsel on Appeals by blind acceptance of the Prosecutor's facts also failure to investigate in the missing discovery forensics cellebrite extraction as testified to that was said to have been from [analyst] Keith Clayton out of the Chaves County Sheriff's Office" [sic]. *Id.* at 9. This argument, again, seems to stem from Mr. Gwynne's misunderstanding regarding the Cellebrite cellphone extraction. Contrary to Mr. Gwynne's multiple assertions in his present habeas petition, the Cellebrite cellphone extraction was done by Deputy Clayton, of the Lea County Sheriff's Office, while the Chavez County Sheriff's Office attempted (but was unsuccessful at) a separate laptop extraction. Jury Trial CD at 4:40:39 to 4:41:21 (June 2, 2014). Thus, I recommend finding that Mr. Gwynne has failed to show that his appellate counsel acted unreasonably for not including this issue on appeal. I also recommend finding that Mr. Gwynne's claim fails because he makes no argument to meet his burden of showing that there is a reasonable probability that, had this issue been included on appeal, he would have prevailed.

Mr. Gwynne also argues that he had ineffective assistance of trial counsel because his trial counsel "failed to object to Detective Munro['s] testimony to preparing a report from said

Cellebrite examination report to which does not exist" [sic], and failed to investigate where Detective Munro received his evidence in this case. Doc. 1 at 10, 11; *see also* Doc. 14 at 5. However, as discussed above with claim 2.3, I do not find that Detective Munro's testimony about the Cellebrite extraction constitutes hearsay, as Mr. Gwynne asserts, and thus trial counsel was not ineffective for failing to object and appellate counsel was not ineffective in attempting to fashion some sort of appellate argument based on this failure to object. Further, Mr. Gwynne fails to offer any argument to meet his burden of showing that there is a reasonable probability that, had either his trial or appellate counsel acted in a different manner, the results of the proceeding would have been different.

Claims 5.2, 6.2, 7.9, 8.5, 9.2, 10.2. Lastly, when discussing his claims for illegal search and seizure, false information in the search warrant, ineffective assistance of trial counsel, *Brady* violations, Confrontation Clause violation, and actual innocence, Mr. Gwynne asserts that he did not raise these issues on direct appeal because he had ineffective assistance of appellate counsel. Doc. 1 at 24, 31, 36, 41, 49, 53 (claims 5.2, 6.2, 7.9, 8.5, 9.2, 10.2). These claims are unexhausted, but I recommend that the Court deny relief on all claims because Mr. Gwynne fails to show that any are meritorious. Mr. Gwynne's argument as to each claim consists of one to two sentences: that the underlying issue was not appealed, that he had no say in the direct appeal, and thus that he "had IAC in failing to raise this issue." Doc. 1 at 24, 31, 36, 41, 49, 53. He, however, offers no argument to meet his burden of showing that his appellate counsel unreasonably failed to discover and appeal a nonfrivolous issue or that had the issue been raised, there is a reasonable probability that he would have prevailed on appeal.

## RECOMMENDATION

For these reasons, I recommend denying Mr. Gwynne's "Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody" (Doc. 1) in its entirety and dismissing the petition with prejudice. I also recommend that the Court make this decision without holding an evidentiary hearing because the claim can be resolved on the record. *See Anderson v. Attorney General of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005). Lastly, I recommend finding that Mr. Gwynne is not entitled to a certificate of appealability. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (finding that to be entitled to a certificate of appealability, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further").

_____
Steven C. Yarbrough
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**